MATTHEW J. BRIDWELL, Plaintiff-Employee v. GOLDEN CORRAL STEAK HOUSE, Defendant-Employer, CIGNA INSURANCE COMPANY, Defendant-Carrier, (GAB ROBINS, Servicing Agent)

No. COA01-428

(Filed 19 March 2002)

**Workers' Compensation— temporary disability—medical evidence insufficient—employment evidence sufficient**

The Industrial Commission did not err in a worker's compensation proceeding by awarding plaintiff temporary total disability benefits following a knee injury where the medical evidence was not sufficient to show disability, but plaintiff met his burden by providing evidence that he was unsuccessful in reasonable efforts to obtain suitable employment. A job in telemarketing was not indicative of his wage earning capacity because he was allowed to get up and walk around as needed, a special accommodation not common in the competitive market, and a vacuum cleaner sales position was not suitable because it aggravated plaintiff's knee condition.

Appeal by defendants from opinion and award entered 26 January 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 January 2002.

*Mark T. Sumwalt, P.A., by Mark T. Sumwalt and Vernon Sumwalt, for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Robert H. Stevens, Jr., and Joy H. Brewer, for defendant-appellant.*

MARTIN, Judge.

Defendants appeal from an opinion and award of the North Carolina Industrial Commission (hereinafter "Commission") awarding plaintiff, Matthew J. Bridwell, temporary total disability benefits. At the time of the incident giving rise to this action, plaintiff was employed by defendant-employer, Golden Corral Steak House, as a waiter. Plaintiff's average weekly wage while working for defendant-employer was $195.67. On 3 May 1998, plaintiff slipped on a wet floor at work while carrying a heavy load of dishes into the kitchen area. Plaintiff felt his right knee pop and experienced the onset of pain and numbness. Immediately after plaintiff's fall, he was unable to walk without assistance.

Prior to this injury, plaintiff had injured his right knee while playing basketball in February 1997. Dr. John P. Ternes of the Nalle Clinic treated plaintiff for this previous injury and performed an anterior cruciate ligament reconstruction on 20 February 1997. Dr. Ternes last examined plaintiff in connection with this surgery on 22 July 1997 and found that plaintiff had no swelling, no patellar inhibition or crepititus, a negative pivot shift test (which suggested the ligament was intact), and a stable knee with only two millimeters of anterior translation, which is within the normal range and further suggested the ligament was intact. Dr. Ternes also found that plaintiff's quadriceps had atrophied, but this is not unusual following such a surgery and does not reflect instability of the knee. Plaintiff was not having problems with his right knee prior to his injury on 3 May 1998. From his examination on 22 July 1997 to his 3 May 1998 injury, plaintiff did not see any medical provider in connection with his knee.

Subsequent to plaintiff's 3 May 1998 knee injury, Dr. Donald B. Goodman at the Nalle Clinic took an x-ray of plaintiff's right knee which was interpreted as normal. Plaintiff was examined by Dr. Ternes on 8 July 1998. Dr. Ternes discovered an increase of four to five millimeters in plaintiff's anterior translation compared to plaintiff's anterior translation on 22 July 1997. Dr. Ternes' examination also revealed that plaintiff had a positive pivot shift. From his examination, Dr. Ternes opined that plaintiff had torn the graft in his right knee and that this injury was related to plaintiff's 3 May 1998 slip-and-fall at work. On 8 July 1998, Dr. Ternes noted that he saw no contraindication of full work with plaintiff's brace on. An MRI of plaintiff's knee was performed on 31 July 1998 and revealed a partial tearing of the graft and a tearing of the postural horn of the medial meniscus. The partial tearing of the graft caused the anterior cruciate ligament to be dysfunctional. Dr. Ternes recommended a second anterior cruciate ligament reconstruction and opined that if plaintiff does not have the recommended surgery, his knee will never become fully functional. Plaintiff saw Dr. Ternes again on 7 August 1998 at which point Dr. Ternes discussed treatment options—continued bracing and exercising versus a reconstruction of his anterior cruciate ligament. Plaintiff expressed a desire to proceed with surgery. On this same date, Dr. Ternes restricted plaintiff from employment through 30 September 1998, based on his assumption that plaintiff would have the surgery immediately. The last time plaintiff saw Dr. Ternes about his knee before the Commission hearing was 28 May 1999, and Dr. Ternes had the same recommendations. At the date of the hearing of the Commission, plaintiff had not undergone surgery.

Despite Dr. Ternes' recommendation on 7 August 1998 that plaintiff have surgery and refrain from working until the surgery could be performed, plaintiff returned to work with defendant-employer on 7 August 1998 and informed his supervisor about his condition. On this same day, after speaking to his supervisor, plaintiff telephoned his mother to inform her of his condition and the doctor's recommendations. Plaintiff was fired by his supervisor after not terminating the call to his mother as his supervisor directed him to do. Following his termination, plaintiff was unable to undergo the recommended surgery because he did not have adequate insurance coverage.

After termination from defendant-employer, plaintiff worked as a telemarketer with Community Funding for approximately two months beginning 19 August 1998 and ending 20 October 1998, earning approximately $320.00 per week. In the telemarketer position, plaintiff was required to sit for long periods of time. Due to his knee condition, plaintiff had difficulty with this aspect of the job. Plaintiff's supervisor was aware of plaintiff's condition and allowed plaintiff to get up and walk around as needed. Plaintiff left this job in order to locate a better paying job. Subsequently, plaintiff worked for a two week period beginning 20 January 1999 and ending 2 February 1999 selling vacuum cleaners. During the two week period, plaintiff sold one vacuum cleaner and received $350.00 in commission. Plaintiff quit this job because it was causing him to have knee problems.

On 14 May 1999, plaintiff returned to Dr. Ternes at which time Dr. Ternes noted that plaintiff had never made a follow-up appointment after the MRI. Dr. Ternes noted that "[i]f the patient were to continue with his present course of buckling and giving way in his knee," he would recommend repeat reconstruction of the anterior cruciate ligament graft. He further noted:

At this point in time, the brace is adequate to hold him in a good position and limit further injury. He should use this at all times when he is working or attempting any sporting activities.

Dr. Ternes stated that plaintiff would follow up with him on an as-needed basis.

On 4 May 1998, defendant-employer completed a Form 19, Employer's Report of Injury to Employee, documenting plaintiff's alleged contusion to the knee. Plaintiff then filed a Form 33 Request for Hearing. Plaintiff's claim was heard by a deputy commissioner who issued an opinion and award on 26 April 2000, awarding plaintiff

medical treatment, including surgery, relating to his compensable injury, as well as temporary total disability benefits ($130.45 per week), pursuant to G.S. § 97-29, beginning on 7 August 1998 and continuing until plaintiff returns to employment or until further order of the Commission. Defendants subsequently filed a Form 44 Application for Review by the Full Commission; and on 26 January 2001, the Full Commission filed its opinion and award affirming the deputy commissioner's opinion and award. Defendant appeals.

---

The ultimate issue on appeal is whether the Commission erred by concluding that plaintiff was disabled as defined by G.S. § 97-2(9) and awarding temporary total disability benefits.

When reviewing an appeal from the Commission, our review is limited to two issues: " '[W]hether the Commission's findings of fact are supported by competent evidence and whether the Commission's conclusions of law are justified by its findings of fact.' " *In re Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 367 (1997) (quoting *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)). If the Commission's findings of fact are supported by any competent evidence, they are conclusive on appeal. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.* The Commission is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993). We review the Commission's conclusions of law, however, *de novo*. *Snead v. Carolina Pre-Cast Concrete, Inc.*, 129 N.C. App. 331, 499 S.E.2d 470, *cert. denied*, 348 N.C. 501, 510 S.E.2d 656 (1998).

An employee is entitled to compensation under the Workers' Compensation Act if he is disabled as a result of a work-related injury. *Rhinehart v. Market*, 271 N.C. 586, 157 S.E.2d 1 (1967). "Disability" is defined as an ". . . incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (1999). In order to show the existence of a disability under this Act, an employee has the burden of proving:

(1) that [he] was incapable after his injury of earning the same wages he had earned before his injury in the same employment,

(2) that [he] was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that [his] incapacity to earn was caused by [his] injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Whether a disability exists is a question of law. *Id.* The employee may meet his initial burden of production by producing:

(1) . . . medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, (2) . . . evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment, (3) . . . evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment, or (4) . . . evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457 (citations omitted). Once an employee meets his initial burden of production, the burden shifts to the employer to show "that suitable jobs are available" and that the employee is capable of obtaining a suitable job "taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990).

Defendants first contend that the medical evidence presented in this case fails to support a finding of disability. While we agree that plaintiff's medical evidence is insufficient to show disability, we conclude that plaintiff has met his initial burden of production through other evidence.

The Commission made the following findings of fact with regard to plaintiff's ability to work from a medical standpoint:

6. Dr. Ternes saw plaintiff again on 7 August 1998, and plaintiff had virtually the same findings. Dr. Ternes restricted plaintiff entirely from any and all employment as of 7 August 1998, based on his assumption that plaintiff would have the surgery immediately. Dr. Ternes saw plaintiff on one last occasion on 28 May 1999, and at this examination Dr. Ternes had virtually the same recommendations. Plaintiff had not undergone the surgery as of the date of the hearing in the matter.

7. Dr. Ternes recommended surgery for plaintiff on 7 August 1998 and also recommended that he not return to any work until the surgery could be performed. Following this examination, and despite Dr. Ternes recommendations, plaintiff returned to work with defendant-employer on 7 August 1997 and informed his supervisor regarding his condition.

Upon reviewing the medical records and testimony, we conclude that these findings are not supported by competent evidence. There was no evidence in the record to suggest that Dr. Ternes recommended that plaintiff refrain from working indefinitely. In fact, there is ample evidence in the record supporting a finding to the contrary.

First, Dr. Ternes' office note indicates that plaintiff be totally restricted from any and all employment for a specified period of time—from 7 August 1998 through 30 September 1998. Further, after the MRI revealed the tear of the graft, Dr. Ternes recommended that plaintiff have surgery but also mentioned, as another option, exercise with a brace. After plaintiff indicated that he chose surgery, Dr. Ternes recommended that plaintiff be restricted from all employment until his surgery date in order to lessen the risk of plaintiff reinjurying his knee prior to having surgery.

Moreover, in his report dated 14 May 1999, Dr. Ternes specifically addresses plaintiff's work status. Dr. Ternes notes,

> [a]t this point in time, the brace is adequate to hold him in a good position and limit further injury. He should use this at all times when he is *working* or attempting any sporting activities (emphasis added).

The medical evidence simply does not support findings that plaintiff is restricted from any and all employment indefinitely. Therefore, these findings of fact are not supported by the evidence and cannot support the Commission's conclusion that plaintiff is entitled to continuing temporary total disability benefits.

However, this Court has approved methods of proof other than medical evidence to show that an employee has lost wage earning capacity, and is therefore, entitled to total disability benefits. *See Russell*, 108 N.C. App. 762, 425 S.E.2d 454. We conclude plaintiff has satisfied his burden of proof by producing "evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment. . . ." *Id.* at

765, 425 S.E.2d at 457. The Commission made the following findings of fact with regard to plaintiff's wage earning capacity:

10. Following his termination, plaintiff was unable to undergo the surgery recommended by Dr. Ternes because he did not have adequate insurance coverage. Also, plaintiff was not offered assistance by defendants in locating suitable employment.

11. On his own, plaintiff located a job as a telemarketer with Community Funding and attempted to return to work for [sic] in this position approximately two months beginning 19 August 1998 and ending 20 October 1998. The telemarketing position normally required sitting for long periods of time and due to his knee condition, plaintiff had difficulty with this aspect of the job. Because plaintiff's supervisor knew of his condition, plaintiff was provided a special accommodation by being permitted to get up and walk around as needed.

12. Given the sedentary nature of the telemarketing job with Community Funding and the special accommodations given to plaintiff, the wages he earned in that job were not indicative of his wage earning capacity.

13. Plaintiff then located work, again on his own, with Freeman Distributors selling vacuum cleaners for a two week period beginning 20 January 1999 and ending 2 February 1999. He sold one vacuum cleaner and received $350.00 in commission, but he thereafter had to stop work because of the problems he was experiencing with his knee. This vacuum salesman job was not suitable and plaintiff's attempt to perform it constituted a failed trial return to work.

14. Plaintiff has not worked in any capacity for any employer since 2 February 1999 because of his impending surgery.

. . .

18. As the result of his 3 May 1998 injury by accident and aggravation of his knee condition, plaintiff has been incapable of earning wages in his former position with defendant-employer or in any other employment for the period of 7 August 1998 through the present and continuing, except for the period he was able to work with Community Funding and Freeman Distributors.

In determining whether plaintiff is incapable of earning the same wages at other employment, the Commission is required to focus not

on "whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff [him]self has such capacity." *Little v. Food Service*, 295 N.C. 527, 531, 246 S.E.2d 743, 746 (1978). ". . . [A]n injured employee's earning capacity must be measured . . . by the employee's own ability to compete in the labor market." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 437, 342 S.E.2d 798, 805 (1986). Post-injury earnings should not be relied on in determining earning capacity when they do not reflect this ability to compete with others. *Id.* at 437, 342 S.E.2d at 805-06.

Defendants argue that several of the Commission's findings with regard to plaintiff's wage earning capacity were not supported by competent evidence. We disagree. The Commission found that the wages plaintiff earned in his telemarketing job with Community Funding ($320.00 per week) were not indicative of his wage earning capacity because the job was sedentary in nature and plaintiff was provided special accommodations. When plaintiff was asked whether his employer (Community Funding) was accommodating him with respect to his knee problem, plaintiff responded: "Uh-huh. He was giving me breaks. We had a break every hour or so—every hour or two." When asked whether there was anything about the telemarketing job that affected his knee, plaintiff responded:

> Sitting in a spot for a while. I mean, I had—my boss, he knew. He knew my knee was messed up, so he let me walk about every once in a while, so I was pretty much all right.

Therefore, there is evidence in the record supporting the Commission's finding that ". . . plaintiff was provided a special accommodation by being permitted to get up and walk around as needed." Plaintiff's testimony, as provided above, also supports the Commission's finding that plaintiff had difficulty sitting for long periods of time, which was required in the telemarketing position, due to his knee condition. Since there is evidence that plaintiff was specially accommodated while working for Community Funding and plaintiff had difficulty sitting for long periods of time in this position, the Commission did not err in finding that the wages earned by plaintiff while working for Community Funding do not constitute evidence of wage earning capacity. Defendants did not show that these accommodations are common in the competitive market.

Defendants also contend that the Commission erred in finding that the vacuum salesman job was not suitable to plaintiff and his attempt to perform it constituted a failed trial return to work. We

again conclude that this finding is also supported by competent evidence. "A 'suitable' job is one the claimant is capable of performing considering his age, education, physical limitations, vocational skills, and experience." *Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994). Plaintiff testified that he quit this job after two weeks because the job was aggravating his knee condition. Therefore, the Commission did not err in finding that the position as vacuum salesman was not a "suitable job."

We conclude that the Commission's findings, which are supported by competent evidence, show that plaintiff has satisfied his burden of proving total loss of wage earning capacity and that defendant has failed to rebut plaintiff's evidence by showing that plaintiff possessed wage earning capacity. These findings justify the Commission's conclusion of law that plaintiff is entitled to temporary total disability benefits.

Affirmed.

Judges TIMMONS-GOODSON and BRYANT concur.