AMY TERASAKA, Plaintiff v. AT&T, Defendant

No. COA04-1572

(Filed 6 December 2005)

**Workers' Compensation— carpal tunnel—disability—incapacity for any work—medical evidence inadequate**

A workers' compensation disability award for carpal tunnel syndrome was reversed where plaintiff failed to meet her burden under the only prong of *Russell v. Lowes*, 108 N.C. App. 762, applicable to these facts. She did not produce medical evidence that she was physically or mentally incapable of work in any employment.

Judge Geer dissenting.

Appeal by defendant from Opinion and Award of the Industrial Commission entered 1 July 2004 by Commissioners Bernadine S. Ballance, Pamela T. Young, and Thomas Bolch. Heard in the Court of Appeals 8 June 2005.

*Frederick R. Stann for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Joy H. Brewer for defendant-appellant.*

CALABRIA, Judge.

AT&T ("defendant") appeals the award of the North Carolina Industrial Commission (the "Commission") granting benefits to Amy Terasaka ("plaintiff") based on a diagnosis of carpal tunnel syndrome. We reverse.

On 14 February 2002, plaintiff filed a Form 18 alleging she developed pain in both of her hands on or about 17 October 2001 while typing during an intense three-day customer service representative training course. In response, defendant filed a Form 61 denying plaintiff's claim. At the time, plaintiff was in her early forties and had consistently worked in the secretarial field throughout her adult life.

On 30 December 1996, plaintiff started her employment with defendant in New Jersey as a senior records clerk. Her duties included typing approximately four hours of every eight hour workday. On 1 February 1997, she transferred to a different division in the New Jersey office, retained her position as a senior records clerk, and spent approximately six hours of each ten hour workday typing.

On 13 September 2001, plaintiff transferred to the Gastonia, North Carolina office of defendant to become a customer service representative. On or about that date, she started a three week customer service representative training course. Two days into the course, she contracted the flu and missed the remainder of the course. She then undertook an intensive three day course to learn what she had missed. During this course, she typed approximately eight hours a day for all three days. Toward the end of the course, on or about 17 October 2001, she felt tingling and numbness in her hands. Shortly thereafter, she started work as a customer service representative.

On 23 October 2001, she experienced numbness in both hands with pain extending from her hands to her shoulders, which prevented her from working. She visited several doctors and was eventually seen by Dr. David S. Baker ("Dr. Baker") on 13 March 2002. After examining plaintiff and reviewing her nerve conduction tests, Dr. Baker diagnosed plaintiff with carpal tunnel syndrome in both wrists. He injected cortisone into her wrists, and her symptoms briefly subsided but returned. On 24 April 2002, Dr. Baker performed

surgery on her left wrist to release pressure on the nerve in the carpal tunnel. On 15 May 2002, plaintiff reported relief of symptoms in her left hand, and on 27 June 2002, Dr. Baker performed surgery on her right wrist. On 25 September 2002, plaintiff reported severe pain in both hands and wrists, which prevented her from using her hands for approximately two to three weeks. Dr. Baker's exam indicated tendinitis of the wrists, and he injected both her wrists with cortisone at the location of the pain.

On 9 October 2003, after returning to work for four days, plaintiff reported severe pain and an inability to use her hands for normal activities. Dr. Baker stated he could not explain her level of pain and dysfunction on any medical or scientific basis and told her there were no other diagnostic or treatment options in his specialty that would benefit her. He further opined that typing is a repetitive activity that could cause carpal tunnel syndrome. However, he could only say plaintiff's typing might be an influencing factor and could not quantify to what degree typing was the cause as compared to other possible factors.

Twice in December 2002, plaintiff saw Dr. Raymond C. Sweet ("Dr. Sweet"), a neurosurgeon. Dr. Sweet's physical examination of plaintiff's hands and wrists indicated some type of nerve condition. However, her nerve conduction tests indicated normal functioning. He stated he had never seen a patient with normal nerve conduction tests have positive indicators for a nerve condition based on physical examination and would not recommend another operation when presented with normal nerve conduction tests. He stated repetitive hand motions, such as typing six hours out of a ten hour workday, created a greater risk of developing carpal tunnel syndrome, and carpal tunnel syndrome could develop in certain individuals in as little as three to four months. Moreover, Dr. Sweet stated that in his medical opinion plaintiff's work history of typing was a significant factor in her developing carpal tunnel syndrome. He stated that with the exception of the nerve conduction tests, her physical exam signs and history were consistent with her complaints of pain and that plaintiff likely damaged the median nerve running through her wrist. Additionally, he noted if her condition had not changed since her visits to him in December 2002, it would be unlikely she would be able to return to a job that involves repetitive hand and wrist motion.

After a 19 May 2004 hearing on this matter, the Commission concluded: (1) "plaintiff developed bilateral carpal tunnel syndrome, an occupational disease, due to causes and conditions characteristic of

and peculiar to her employment that was not an ordinary disease of life to which the general public is equally exposed"; (2) plaintiff proved "that she was temporarily totally disabled from 13 March 2002, less four days, and continuing thereafter"; (3) "[p]laintiff is entitled to receive total disability benefits in the weekly amount of $502.36 from 13 March 2002, less four days, and continuing until further order of the [Commission]"; and (4) "defendants shall pay all medical expenses incurred for the treatment of her occupational injuries, including those arising from future treatment by a suitable physician addressing pain disorders[.]" Defendant appeals.

Defendant raises several assignments of error on appeal. We initially address whether plaintiff met her burden of proving disability. Because we hold that plaintiff failed to meet her burden, we do not address defendant's remaining assignments of error.

To obtain workers' compensation benefits, a claimant bears the burden of proving both the existence and the extent of disability. *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997). Specifically, in the absence of a Form 21 or other admission of liability for compensation, the employee bears the burden of proving she is disabled. *Demery v. Converse, Inc.*, 138 N.C. App. 243, 249, 530 S.E.2d 871, 876 (2000). An employee injured in the course of her employment is disabled under the Act if the injury results in an "incapacity . . . to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2003). An employee may meet the burden of showing disability in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in *any* employment[]; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment[]; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[]; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted) (emphasis added).

The determination that an employee is disabled is a conclusion of law that must be based upon findings of fact supported by competent evidence. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). In support of its conclusion that plaintiff is temporarily totally disabled, the Commission made the following pertinent findings of fact:

4. . . . Plaintiff also saw Dr. David Baker, who first examined her on 13 March 2002, when plaintiff presented with severe hand and arm pain with numbness and tingling. . . . At that point, Dr. Baker did not believe plaintiff could work and took her out of work on 13 March 2002.

5. On 25 September 2002, plaintiff complained of severe pain in both hands and wrists. . . . [Doctor Baker] excused her from work until 9 October 2002. . . . On 20 November 2002, Dr. Baker believed that there was no more he could offer her in terms of treatment. . . . He was unable to make any recommendations about her future employment.

7. . . . [Dr. Sweet] last saw plaintiff on 23 December 2002. . . . Dr. Sweet was of the opinion that plaintiff could not return to any job which required repetitive motion of the hands and wrists.

10. . . . As of 13 March 2002, plaintiff was *unable to work in any capacity* due to her carpal tunnel syndrome and, except for four days when she later attempted to return to work, plaintiff remained disabled.

11. In that plaintiff has continued to experience debilitating symptoms that Dr. Baker refused to address, it appears that plaintiff should be seen by a doctor qualified to diagnose pain disorders. There is no evidence that plaintiff has reached maximum medical improvement.

(Emphasis added).

Finding of fact 10 is supported by competent evidence because plaintiff testified as follows:

Q: . . . [C]an you return to your past work that involved so much typing [?]

A: No, sir, I can't. . . . I won't be able to use my hands ever.

. . .

Q: Besides typing, do you have any other problems using your hands?

A: My activity of daily living is severely compromised. . . . My husband has to dress me, has to turn knobs for me, meaning water faucets, door handles. He has taken on all of the household duties, laundry, vacuuming, feeding us, grocery shopping, driving. . . . I can't really do much of anything.

Q: How about driving a car?

A: No. . . . I have hand cramps inconsistently. I would be afraid of causing injury to myself or others.

. . .

Q: But are you able to use your hands on a regular basis for a job?

A: No.

Because finding 10 is supported by competent evidence it is conclusive on appeal. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Since the Commission conclusively found "plaintiff was *unable to work in any capacity* due to her carpal tunnel syndrome," the only *Russell* prong applicable on these facts is the first prong. The dissent contends we have improperly applied the *Russell* test by holding "that because plaintiff Amy Terasaka failed to offer medical evidence meeting the first method of proof, she has necessarily failed to prove total disability." The dissent misconstrues our holding. While we agree that a plaintiff can ordinarily prove disability under any of the four *Russell* prongs, *see Bridwell v. Golden Corral Steak House*, 149 N.C. App. 338, 342, 561 S.E.2d 298, 302, on these particular facts, the Commission's finding 10 is conclusively established and precludes us from considering any of the other *Russell* prongs.

Thus, under the only *Russell* prong applicable on these facts, in order for plaintiff to meet her burden of proving disability, she had to produce *medical evidence* that she is physically or mentally, as a consequence of the work related injury, incapable of work in *any* employment. *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. However, the Commission found in finding 7, however, that the medical evidence merely showed "plaintiff could not return to any job which required repetitive motion of the hands and wrists." This finding does not amount to a finding that plaintiff could not work in *any* employment. Finding 7 is supported by competent evidence in that

Dr. Sweet testified that "it's unlikely [plaintiff] would be able to return to a job that involves repetitive hand motion and wrist motion" based on his medical analysis. Moreover, we cannot remand for additional findings because the transcripts reveal no medical evidence that could support a finding that plaintiff was incapable of work in *any* employment. Accordingly, because plaintiff failed to meet her burden of establishing disability under *Russell*, we hold the Commission erred in concluding that plaintiff "prove[d] that she was temporarily totally disabled from 13 March 2002, less four days, and continuing thereafter." Furthermore, the Commission's award based on this conclusion was likewise in error, and we reverse the opinion and award of the Commission.

Reversed.

Judge ELMORE concurs.

Judge GEER dissents with a separate opinion.

GEER, Judge, dissenting.

I believe that the majority has failed to properly apply the test in *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993) and, therefore, respectfully dissent. As the majority acknowledges, an employee may meet her burden of proving disability in one of four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Id.* at 765, 425 S.E.2d at 457 (internal citations omitted). The majority, however, holds that because plaintiff Amy Terasaka failed to offer medical evidence meeting the first method of proof, she has necessarily failed to prove total disability.

An employee contending that she is totally disabled is not limited to proving by medical evidence her incapacity to work at any employment. As this Court emphasized in *White v. Weyerhaeuser Co.*, 167 N.C. App. 658, 672, 606 S.E.2d 389, 399 (2005), "[t]he absence of medical evidence does not preclude a finding of disability under one of the other three [*Russell*] tests." *See also Bridwell v. Golden Corral Steak House*, 149 N.C. App. 338, 342, 561 S.E.2d 298, 302 ("While we agree that plaintiff's medical evidence is insufficient to show disability, we conclude that plaintiff has met his initial burden of production through other evidence."), *disc. review denied*, 355 N.C. 747, 565 S.E.2d 193 (2002).

The second and third methods of proof under *Russell* lead to the same conclusion as the first method of proof: that the employee is unable to work in any capacity. The first method establishes that the employee is medically incapable of working, while the second and third methods focus on the vocational component of disability. Under those two methods, an employee is deemed totally disabled because even though the employee may be medically capable of performing work, employers nonetheless will not hire the employee. *See White*, 167 N.C. App. at 673, 606 S.E.2d at 399-400 (affirming award of total disability for closed period based on the Commission's finding that the plaintiff, during that period, made unsuccessful efforts to find suitable work); *Bridwell*, 149 N.C. App. at 343-44, 561 S.E.2d at 302 (holding that even though the medical evidence did not support the Commission's findings that the plaintiff was restricted from any and all employment, the award of total disability should be affirmed based on findings that the plaintiff had unsuccessfully sought suitable employment). I can find no basis upon which to distinguish *White* and *Bridwell* from this case.

Thus, Terasaka was permitted to meet her burden of proving total disability by producing, as she did, "evidence that [she] is capable of some work, but that [she] has, after a reasonable effort on [her] part, been unsuccessful in [her] effort to obtain employment." *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. I disagree with the majority's suggestion that the Commission considered only the first *Russell* method of proof. Nothing in the opinion and award indicates such a limitation. To the contrary, the Commission specifically found that "[p]rior to the hearing before the deputy commissioner, plaintiff had looked extensively for other types of work and had not received any job offers." This finding of fact specifically refers to the second method of proof set out in *Russell*.

That finding is in turn supported by Terasaka's testimony that she had made approximately 500 attempts to find jobs, using the Internet, the newspaper, and the telephone, but that she received no job offers. Defendants challenge the credibility of that testimony and argues that "the greater weight of the evidence" shows—despite this testimony—that Terasaka was not disabled. This argument fails to recognize the appropriate standard of review. The Commission's findings of fact are conclusive upon appeal if supported by any competent evidence, even if there is evidence to support a contrary finding. *Morrison v. Burlington Indus.*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981). Moreover, on appeal, this Court may not re-weigh the evidence or assess credibility. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

Since the Commission's finding of fact regarding Terasaka's job search is supported by competent evidence and since that finding is sufficient to support the conclusion that Terasaka met her burden of proving a total incapacity to earn wages, I would uphold the Commission's determination that Terasaka is totally disabled. With respect to defendants' remaining arguments, I do not find them persuasive.

Defendants argue that the evidence is insufficient to support the Commission's determination that Terasaka suffered an occupational disease. As our Supreme Court explained in *Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 301 S.E.2d 359 (1983), to be considered an occupational disease under N.C. Gen. Stat. § 97-53(13) (2003), a condition must be:

> (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [claimant's] employment."

308 N.C. at 93, 301 S.E.2d at 365 (quoting *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981)); *see also Booker v. Duke Med. Ctr.*, 297 N.C. 458, 468, 475, 256 S.E.2d 189, 196, 200 (1979). The Court further held that the first two elements "are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." *Id.* at 93-94, 301 S.E.2d at 365. The causation requirement "is satisfied if the employment 'significantly contributed to, or was a significant causal factor

in, the disease's development.'" *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 354, 524 S.E.2d 368, 371 (quoting *Rutledge*, 308 N.C. at 101, 301 S.E.2d at 369-70), *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000).

Defendants argue that the evidence is insufficient to permit a finding either that Terasaka was at increased risk of suffering carpal tunnel syndrome or that her work caused her carpal tunnel syndrome. Dr. Sweet, however, specifically testified that a person who types four to six hours a day—as Terasaka testified she did—is at a greater risk of developing carpal tunnel syndrome than the general public. Dr. Baker similarly confirmed that employees who do a lot of typing have an increased risk of carpal tunnel syndrome, although he indicated that the number of hours of typing required to trigger the syndrome varies from person to person. Further, after plaintiff's counsel set out a hypothetical question that extended over three pages of transcript and specified the pertinent facts relating to Terasaka's work and medical history, Dr. Sweet expressed the opinion that Terasaka's work was a "significant contributing factor" to her carpal tunnel syndrome. This testimony is sufficient to meet the requirements of *Rutledge*.

Defendants' arguments regarding Dr. Sweet's testimony relate to questions of credibility and weight, issues that this Court may not revisit. It is well-established that the Commission is the "sole judge of the credibility of the witnesses, and of the weight to be given to their testimony[;] . . . it may accept or reject the testimony of a witness . . . in whole or in part . . . ." *Anderson v. Northwestern Motor Co.*, 233 N.C. 372, 376, 64 S.E.2d 265, 268 (1951). Defendants point to portions of Dr. Sweet's testimony that they contend show speculation. As, however, Judge Hudson stated in a dissenting opinion adopted by the Supreme Court in *Alexander v. Wal-Mart Stores, Inc.*, 359 N.C. 403, 610 S.E.2d 374 (2005) (per curiam), it is not "the role of this Court to comb through the testimony and view it in the light most favorable to the defendant, when the Supreme Court has clearly instructed us to do the opposite. Although by doing so, it is possible to find a few excerpts that might be speculative, this Court's role is not to engage in such a weighing of the evidence." *Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting).

Finally, defendants argue that Terasaka's current symptoms are unrelated to any occupational disease that she may have suffered. Again, to agree with defendants, this Court would have to accept

their dismissal of Dr. Sweet's testimony. I do not believe that we have the authority to do so. Accordingly, I would affirm the decision of the Full Commission.