APPEARANCES
Plaintiff: Poisson Poisson Bower, PLLC, Attorneys, Wadesboro, North Carolina; Fred D. Poisson, Jr., appearing.
Daniel Roebuck, PLLC, Attorneys, Rockingham, North Carolina; John Daniel, appearing.
Defendant: Hedrick Gardner Kincheloe Garofalo, LLP, Attorneys, Charlotte, North Carolina; Paul Lawrence, appearing.
 ***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The parties stipulate that the employee/employer relationship existed at the time of the alleged incident.
2. The parties stipulate that John Wieland Homes, Inc. is the employer.
3. The parties stipulate that claimant's back injury is compensable.
4. The parties stipulate that the back and other alleged injuries occurred on January 8, 2004.
5. The parties stipulate that the parties were subject to the North Carolina Workers' Compensation Act at the time of the incident. The employer employed the requisite number of employees to be bound under provisions of the Act.
6. The North Carolina Industrial Commission has jurisdiction over the parties and the subject matter of this action.
7. The parties stipulate that the average weekly wage is $608.05 which results in a compensation rate of $405.36.
8. The Parties stipulated into evidence as Stipulated Exhibit No. 1, Pre-Trial Agreement, as modified and initialed by the parties.
9. The Parties stipulated into evidence as Stipulated Exhibit No. 2, medical records.
10. The Parties stipulated into evidence as Stipulated Exhibit No. 2, All NCIC Forms.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the Deputy Commissioner, plaintiff was forty-nine (49) years of age. *Page 3 
2. On January 8, 2004, plaintiff was working for defendant as a carpenter with an average weekly wage of $608.05 per week with a compensation rate of $405.36. While working on second story windows, he fell to the ground.
3. Plaintiff's fall rendered him unconscious, nauseated, vomiting, incontinent, and apparently shaking.
4. Plaintiff suffered a seizure on January 8, 2004 as a result of the fall.
5. Subsequent to plaintiff's January 8, 2004, work injury, defendant provided medical treatment for plaintiff's injuries.
6. On January 8, 2004, plaintiff was seen at Springs Hospital where a CT of the abdomen, pelvis, and head was performed as well as a RAD of the lumbar spine, left hip, right hip, and abdomen. Plaintiff was diagnosed with a probable left lower rib fracture and an acute compression deformity of the L4 vertebrae.
7. From January 14, 2004, to February 17, 2004, plaintiff treated with Carolina Orthopaedic Surgery Associates, P.A. for an L4 compression fracture and possible rib fractures.
8. On January 28, 2004, defendant caused to be completed an Employer's Admission of Employee's Right to Compensation (Form 60) stating employee fell out of a window and injured his rib and lower back. On March 12, 2004, the Industrial Commission approved a Form 21 Agreement between the parties for "necessary weeks" as a result of plaintiff's January 8, 2004, compensable work injuries.
9. Beginning on March 1, 2004, plaintiff began to treat with Charlotte Orthopedic Specialists whose name thereafter changed to OrthoCarolina. Here an MRI was performed for the first time. The MRI showed acute superior and anterior wedge compression fractures at T11 *Page 4 
and L4 levels with 25% loss of vertebral body height and bulges with mild central stenosis at T11-12, L3-4, and L4-5.
10. On March 9, 2004, plaintiff was placed on Feldene and Neurontin. It is not clear how long plaintiff was given Neurontin.
11. Neurontin was prescribed for plaintiff for nerve pain; however, Neurontin is also a seizure medication.
12. On April 22, 2004, as a result of plaintiff's compensable January 8, 2004, work injuries, plaintiff underwent Kyphoplasty at T11 and L4. This surgery was performed by Dr. Milam.
13. On July 19, 2004, pain management was recommended for plaintiff by Dr. Milam.
14. On August 19, 2004, plaintiff began treatment with Dr. Thomas Heil with Southeastern Pain Care for a period of time for his pain management treatment.
15. On March 27, 2006 plaintiff began to treat with Dr. Neal Goldberger at the Arthritis Clinic and Carolina Bone and Joint for pain management. Dr. Goldberger continues to treat plaintiff and continues to prescribe medication for plaintiff's on-going pain management.
16. On May 5, 2005, plaintiff experienced a seizure in the lobby of Dr. Milam's office, and was transported to Presbyterian Hospital.
17. After May 5, 2005, plaintiff was seen and treated by Dr. Mandel for post-traumatic seizures until treatment was discontinued for lack of funds by plaintiff. Dr. Mandel placed plaintiff under specific work restrictions based upon his post-traumatic seizures.
18. In Dr. Mandel's opinion plaintiff suffered from post-traumatic seizures by a closed head injury resulting from his compensable accident of January 8, 2004. Dr. Mandel *Page 5 
observed that plaintiff displayed a number of classic closed head symptoms other than seizures. Defendant did not present any evidence to dispute or contradict Dr. Mandel's opinion as to the causation of plaintiff's post-traumatic seizures.
19. On May 11, 2005, noting chronic and persistent back pain, Dr. Milam placed plaintiff on work restrictions of no lifting over shoulder grid, 15 pounds, waist to shoulder, 30 pounds, floor to waist, 50 pounds, with lifting of up to 30 pounds occasionally, 25 pounds frequently, and 15 pounds constantly.
20. Dr. Milam released plaintiff to return to work on May 12, 2005, with the above stated restrictions.
21. On May 19, 2005, two weeks after plaintiff's seizure in Dr. Milam's lobby, defendant completed a Form 61 denial of plaintiff's claim for seizures. Defendant's denial of plaintiff's claim for seizures continued even after his seizures were determined to be post-traumatic seizures related to his accepted injury of January 8, 2004.
22. John McGregor, a vocation expert, was engaged by defendant to formulate a vocation plan and assist plaintiff in locating suitable employment.
23. John McGregor sought and located a number of construction jobs within plaintiff's restrictions on lifting as defined by Dr. Milam. However, John McGregor did not take into account restrictions placed on plaintiff by Dr. Mandel for his seizures which included no driving within one year of a seizure, no operating mechanical devices or tools, and no working off ground level. In his deposition, John McGregor testified that these restrictions would have been very relevant to a determination of whether any jobs he had identified to be available for plaintiff were actually jobs within plaintiff's work-restrictions. *Page 6 
24. John McGregor testified plaintiff was very cooperative and usually found his own jobs as a self employed subcontractor within days of other jobs being located.
25. John McGregor testified that based upon plaintiff's circumstances he believed the best and most suitable job for plaintiff was to be self employed.
26. In May of 2007, while working as a self employed subcontractor managing his own crew, plaintiff experienced an increase in pain.
27. Between May of 2007 and October of 2007, plaintiff continued to work with increasing pain.
28. Plaintiff returned to Dr. Milam on October 11, 2007. At this visit, plaintiff indicated to Dr. Milam that he'd begun having left-sided back and buttock pain in May 2007.
29. Dr. Milam testified that the pain plaintiff complained of in October 2007, was distinct and different from the original pain plaintiff was experiencing in 2004-2005. The pain plaintiff suffered in 2004, when he was referred to Dr. Milam was localized pain associated with the fracture plaintiff had sustained. The pain at the time of the October 11, 2007, visit was L5 distribution pain.
30. Dr. Milam ordered an MRI of plaintiff's lumbar spine. The MRI was performed on October 24, 2007. The MRI revealed age appropriate degeneration and the cement in the T-11 to L4 region from the Kyphoplasty. Dr. Milam testified that plaintiff had no nerve compression to explain his L5 leg symptoms.
31. Dr. Milam's testimony establishes that from plaintiff's initial course of treatment with Dr. Milam in 2004 and 2005 until October 2007, the symptoms plaintiff described changed.
32. Dr. Goldberger recommended provocative lumbar discography in order to isolate the cause of plaintiff's lumbar symptoms. Dr. Milam did not recommend the treatment. *Page 7 
33. Neither Dr. Milam nor Dr. Goldberger has related plaintiff's current lumbar symptoms which began on or after May 2007, when plaintiff was working as self-employed, to his compensable January 8, 2004, injury.
34. The Full Commission finds as fact that plaintiff has failed to show by the greater weight of the evidence that his May 2007, symptoms and complaints of pain are related to his compensable injury by accident of January 8, 2004. The greater weight of the evidence supports that plaintiff's May 2007, symptoms and complaints of pain are distinct from and unrelated to plaintiff's January 8, 2004, compensable injury by accident. Therefore, plaintiff is not entitled to further medical treatment as it relates to his May 2007, symptoms and complaints of pain, including the testing recommended by Dr. Goldberger.
35. Plaintiff suffers from post-traumatic seizures resulting from his January 8, 2004, injury. Plaintiff suffered a seizure on January 8, 2004, another seizure on May 5, 2005, and may have suffered other seizures after May 5, 2005, to present, when off his medications. Plaintiff continues to be under the restrictions placed upon him by Dr. Mandel.
36. Due to the restrictions placed upon plaintiff by Dr. Mandel, as well as those placed upon him by Dr. Milam, and the testimony of the vocational expert, John McGregor, plaintiff has not refused any job within his restrictions and in fact has pushed himself to find things he could do via self-employment.
37. As of the date of hearing, plaintiff remains out of work due to injuries from his January 8, 2004, compensable injury.
38. The Full Commission finds as fact, from a review of the evidence of record in its entirety, that plaintiff has shown by the greater weight that he is disabled as a result of his compensable injury by accident of January 8, 2004. *Page 8 
39. As of the date of hearing before the Deputy Commissioner, plaintiff remained out of work due to injuries from his January 8, 2004, compensable accident. While evidence was produced at hearing that plaintiff earned some wages during this period of time, no other evidence was produced that was necessary to determine what plaintiff actually earned.
40. The Full Commission finds as fact that defendants did not present competent evidence to show that plaintiff should not be paid benefits nor that he should be paid benefits under N.C. Gen. Stat. § 97-30 as opposed to N.C. Gen. Stat. § 97-29 during this period of disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on January 8, 2004, which resulted in injuries to his back and ribs, including post-traumatic seizures. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's injury by accident on January 8, 2004, and his resulting medical injuries, plaintiff was disabled from January 8, 2004, to the present and continuing. N.C. Gen. Stat. § 97-29.
3. Defendants have the burden of proving that plaintiff did not remain disabled following payment of benefits under N.C. Gen. Stat. § 97-29 following the entry of the Form 21 agreement. Kisiah v. W.R. Kisiah Plumbing, Inc.,124 N.C. App. 72, 476 S.E.2d 434 (1996). In order to carry their burden, defendants must come forward with evidence to show not only that suitable jobs are available to plaintiff, but also that plaintiff is capable of getting one, taking into *Page 9 
account both physical and vocational limitations. Kennedy v. DukeUniv. Med. Ctr., 101 N.C. App. 24, 398 S.E.2d 677 (1990).
4. Plaintiff's self employment in this case was not suitable employment for plaintiff given his restrictions from his compensable injuries. Wages earned at unsuitable employment are not competent evidence of wage earning capacity. See Bridwell v. Golden CorralSteakhouse, 149 N.C. App. 338, 561 S.E.2d 298 (2002). Therefore, any evidence of wages earned in this unsuitable employment does not meet defendants' burden under Kennedy v. DukeUniv. Med. Ctr., 101 N.C. App. 24, 398 S.E.2d 677 (1990).
5. Defendants have therefore failed to present competent evidence to establish that there were suitable jobs within plaintiff's restrictions available in the general economy. There is no evidence that if plaintiff was able to find a suitable job and be hired, that he would have been able to successfully perform and maintain such employment at least through the nine (9) month trial return to work period. See Watkins v. Central Motor Lines, Inc.,279 N.C. 132-38, 181 S.E.2d 588, 592 (1971); Kennedy v. DukeUniv. Med. Ctr., 101 N.C. App. 24, 398 S.E.2d 677 (1990).
6. Defendants have failed to rebut plaintiff's entitlement to ongoing indemnity benefits in this case. As a direct and proximate result of plaintiff's injury by accident on January 8, 2004, and his resulting medical injuries, the greater weight of the evidence establishes that plaintiff was disabled from January 8, 2004, to the present and continuing. N.C. Gen. Stat. § 97-29.
7. As a direct and proximate consequence of plaintiff's compensable injury by accident, plaintiff is entitled to temporary total disability compensation at a rate of $ 405.36 per *Page 10 
week from January 8, 2004, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
8. Defendant is entitled to an offset for any wages earned by plaintiff from employment after January 8, 2004, and up to the present. Moretz v. Richards Associates, Inc.,316 N.C. 539, 342 S.E.2d 844 (1986).
9. Plaintiff is entitled to have defendant provide all medical treatment necessitated by his January 8, 2004, compensable injuries, including his post-traumatic seizures. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
10. Plaintiff is not entitled to have defendant provide medical treatment for his complaints of pain related to his May of 2007 back symptoms as presented to Dr. Milam on October 11, 2007. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to attorney's fees hereinafter approved, and an offset to defendant for any wages earned by plaintiff, defendant shall pay temporary total disability compensation to plaintiff at the rate of $405.36 per week from January 8, 2004, until the present and continuing. Such amount that has already accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff in paragraph 1 is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sum due plaintiff in paragraph 1 shall be deducted from that *Page 11 
amount and shall be paid directly to plaintiff's counsel. Thereafter, every fourth payment due plaintiff shall be paid directly to plaintiff's counsel as an attorney's fee.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries for as long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability, when bills for the same have been approved in accordance with the provisions of the Act.
4. Dr. Mandel is authorized as plaintiff's treating physician for treatment of plaintiff's post-traumatic seizures. Defendant shall provide the necessary medical treatment recommended by Dr. Mandel for plaintiff's post-traumatic seizures.
5. Defendant shall pay the costs.
This the 27th day of April, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1