DAVID N. WEATHERFORD, EMPLOYEE, PLAINTIFF V. AMERICAN NATIONAL CAN CO., EMPLOYER, GALLAGHER BASSETT SERVICES, CARRIER, DEFENDANTS

No. COA03-1374

(Filed 1 February 2005)

**Workers' Compensation— disability—medical restrictions—retirement**

The Industrial Commission properly concluded that plaintiff suffered a disability which rendered him incapable of any employment, based on competent evidence including personal and medical testimony, where plaintiff injured his knees, attempted to return to work, continued to experience pain, and retired. Plaintiff's condition, as well as his medical restrictions, prevented his performing his job with defendant.

Appeal by defendants from opinion and award filed 1 August 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 May 2004.

*Robinson & Lawing, L.L.P., by Jolinda J. Babcock, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George H. Pender and Tara D. Muller, for defendant-appellants.*

BRYANT, Judge.

American National Can Company, Inc.[1] (employer-defendant) and Gallagher Bassett Services (carrier-defendant), collectively defendants, appeal from an opinion and award of the North Carolina

———

1. Co-defendant, Gallagher Bassett Services, is the carrier for the employer, a qualified self-insurer.

Industrial Commission (Commission) dated 6 August 2003 awarding David N. Weatherford (plaintiff) ongoing total disability compensation after 1 July 2000 as a result of his work related knee injuries.

Plaintiff, age 64 (born 1940), began working for defendant in 1976. For the final fifteen years of his employment, plaintiff worked as a back-end maintainer of the decorator machine which prints out labels directly onto soda and beer cans. He worked twelve-hour shifts, four days per week, occasionally working overtime. His job consisted of standing, walking, climbing steps and kneeling on cement and metal surfaces.

In 1998, plaintiff began experiencing knee problems. On 17 August 1998, plaintiff met with Dr. King who diagnosed plaintiff with chondromalacia, patella femoral joint and internal derangement with mild synovitis in his left knee. Dr. King authorized plaintiff to be out of work from 15 September 1998 through 8 November 1998 in order to perform arthroscopic surgery on plaintiff's left knee.

After having surgery on his left knee, plaintiff resumed his same job duties as a maintainer for defendant. On 17 June 1999, plaintiff returned to see Dr. King for problems that had developed with his right knee. Dr. King diagnosed internal derangement with chondromalacia patella of plaintiff's right knee and performed arthroscopic surgery on 13 July 1999. Plaintiff returned to work on 27 September 1999.

On 20 March 2000, plaintiff once again consulted with Dr. King, complaining of pain and swelling in his right knee. Dr. King prescribed Novacain, physical therapy and authorized plaintiff to be out of work until 1 July 2000. Because plaintiff continued to experience knee pain even after he had been authorized to return to work, he retired 2 July 2000.

Plaintiff received short-term group disability payments for the periods of medical leave that Dr. King had authorized. Plaintiff was paid a gross weekly amount of $313.00 in addition to the following payments: a) $2,369.84 for 9 September 1998 through 7 November 1998; b) $4,247.86 for 20 June 1999 through 3 October 1999; and c) $4,292.57 for 20 March 2000 to 1 July 2000.

On 13 September 2000, plaintiff filed two separate occupational disease claims, one for each knee. Defendants filed an Industrial Commission (I.C.) Form 61 on 15 November 2000, denying plaintiff's claims. In April 2002, Dr. King testified in his deposition plaintiff was

not physically capable of returning to his former job with defendant due to his knee conditions.

After reviewing Dr. King's deposition and hearing testimony from plaintiff, two of plaintiff's co-workers, and plaintiff's wife, the parties stipulated to plaintiff's disability and the compensability of plaintiff's claim. They further stipulated plaintiff was disabled from 9 September 1998 to 7 November 1998; from 17 June 1999 to 2 October 1999; and from 20 March 2000 to 1 July 2000. However, no I.C. Form 21 was ever filed. Nonetheless, pursuant to the stipulation, defendants agreed to pay plaintiff for periods of work missed due to his occupational diseases, subject to a credit for all disability paid by the defendant's group insurance plan. The parties also stipulated to plaintiff's compensation rate: $532.00 for the left knee, and $560.00 for the right knee.

At the hearing before the Deputy Commissioner, the sole issue was whether the plaintiff was entitled to benefits after 1 July 2000; and, if so, the amount and type of benefits. After hearing live testimony, reviewing deposition testimony, exhibits and other submissions of the parties, the Deputy Commissioner issued an opinion and award on 15 October 2002. The Deputy Commissioner concluded that plaintiff sustained a compensable occupational disease as a result of work related injury to his knees and was therefore entitled to ongoing disability benefits. Defendants were ordered to pay past medical compensation as well as ongoing temporary total disability benefits and future medical treatment for plaintiff's knee condition.

Defendants appealed to the Full Commission. In an opinion and award dated 1 August 2003, the Commission found plaintiff to be totally disabled, affirmed the opinion and award of the Deputy Commissioner, with modifications, and ordered defendants "to pay total disability benefits from 9 September 1998 to 7 November 1998; from 17 June 1999 to 2 October 1999; and from 20 March 2000 continuing through the present date until further order of the Commission." In addition, defendants were ordered to pay all medical expenses related to plaintiff's work related injury. Defendants appeal from the Commission's order dated 1 August 2003.

At the outset, defendant argues, and we agree, that plaintiff had no continuing presumption of disability after 1 July 2000. *Johnson v. Southern Tire Sales and Serv.*, 358 N.C. 701, 706, 599 S.E.2d 508, 512 (2004) (burden remained on employee to prove disability in the absence of Form 21 or Form 26).

We now review the dispositive issue raised on appeal: whether the Commission erred in finding and concluding that plaintiff's knee pain makes him incapable of any employment after 1 July 2000.

It is well-settled that review of an Industrial Commission decision by this Court is limited to the determination of whether there is competent evidence to support the Commission's Findings of Fact and whether those findings support the Conclusions of Law. *Cox v. City of Winston-Salem*, 157 N.C. App. 228, 232, 578 S.E.2d 669, 673 (2003); *Pernell v. Piedmont Circuits*, 104 N.C. App. 289, 292, 409 S.E.2d 618, 619 (1991) (citation omitted). The Commission's findings of fact are conclusive on appeal even where there is contrary evidence, and such findings may only be set aside where there is a "complete lack of competent evidence to support them." *Johnson v. Herbie's Place*, 157 N.C. App. 168, 171, 579 S.E.2d 110, 113 (2003) (citation omitted); *see also Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). It is the Commission's duty to judge the credibility of the witnesses and to determine the weight given to testimony. *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 653, 508 S.E.2d 831, 834 (1998).

Disability under the Workers' Compensation Act is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2003). The burden is on the employee to show that he is unable to earn pre-injury wages, either in the same employment or in other employment. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982). Plaintiff may show his incapacity to earn pre-injury wages in one of four ways:

> **(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of working in any employment;** (2) the production of evidence that he is capable of some work, but that he has, after reasonable effort on his part, been unsuccessful in his effort to obtain employment; **(3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e. age, inexperience, lack of education, to seek other employment; or** (4) the production of evidence that he has obtained other employment at a wage less than he earned prior to the injury.

*Russell v. Lowes*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (emphasis added). Medical evidence that the plaintiff suffers from

pain as a result of physical injury, combined with the plaintiff's own testimony that he is in pain has been held to be sufficient to support a conclusion of total disability. *Webb v. Power Circuit, Inc.*, 141 N.C. App. 507, 512-13, 540 S.E.2d 790, 793-94 (2000) (affirming opinion and award in plaintiff's favor based on testimony from plaintiff regarding nature of the injury and medical testimony regarding severity of pain and nature of treatment subsequent to injury); *Barber v. Going West Transp. Inc.*, 134 N.C. App. 428, 436, 517 S.E.2d 914, 920 (1999). "Where . . . an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986) (any effort by plaintiff to obtain sedentary employment, the only employment of which he is physically capable, would have been futile because of such preexisting factors; e.g., plaintiff was 57 years old, had limited education and work experience, and his injury was caused by over 25 years of performing same duties for defendant).

Here, Dr. King explained plaintiff's condition as of 20 March 2000 and testified as to complaints of genuine pain consistent with plaintiff's knee injuries. Dr. King described plaintiff's condition as:

> [S]ynovitis, which is the inflammatory process inside the knee and leg weakness or muscle weakness. And they sort of run hand in hand when—the pain becomes significant and the inflammation becomes significant, when the patient is less willing to use the leg, that leads to weakness and then weakness in turn keeps the synovitis and the pain at a fairly high level.

On 4 May 2000, plaintiff returned to see Dr. King after having been out of work and having received six weeks of physical therapy and medication. At that visit, Dr. King noted in his medical records that plaintiff was unable to return to work stating:

> In a case like this, lab tests, dates, results, medications, doses and treatment plans are not helpful in determining whether the plaintiff can return to work or not. What is helpful in making that determination is actually sending him back to work and trying to perform. We have done that and his knee has repeatedly swelled and caused limping, pain, tenderness and swelling. Recommend against further working for him.

Although the parties stipulated to compensability and disability until 1 July 2000, the Commission concluded plaintiff's disability continued after his retirement based on the following findings of fact:

1. At the time of the hearing before [the] Deputy Commission[], plaintiff was 61 years old and was born June 12, 1940. Plaintiff did not finish high school but did obtain a GED. Plaintiff had brief experience working as a mechanic and in construction prior to becoming employed with defendants in 1976. . . . For 25 years plaintiff worked in the same facility. . . .

. . .

23. Plaintiff . . . would have continued to work but for his knee conditions and . . . his inability to work as of July 1, 2000 was due to the condition of his knees.

. . .

26. Plaintiff has continued to suffer from pain, swelling and weakness in his knees. Dr. King has indicated that even if plaintiff could find employment he would be limited to no climbing, stooping, squatting, bending kneeling, or going up steps and only intermittent standing for a total of two hours out of an eight hour workday, with the remainder of the time in a seated position. Dr. King testified that if plaintiff had not retired, he would not have allowed him to return to work.

27. Plaintiff testified that he has never had a sedentary position. He has no job training or skills to obtain sedentary work.

28. Plaintiff testified that he is unable to stay in one position any period of time. If he sits for too long, he is unable to get up. He is unable to walk for very long and must balance his activities with his continuous pain.

. . .

34. As of July 1, 2000 plaintiff reached maximum medical improvement. Plaintiff's pain is genuine and his testimony regarding his pain, symptoms and abilities is accepted as credible and convincing.

35. Plaintiff has been disabled since July 1, 2000 and continues to be disabled. Defendants have presented no evidence of suitable employment to rebut plaintiff's disability.

Accordingly, plaintiff satisfied the first and third *Russell* prongs as reflected in the pertinent Commission's conclusion of law:

2. [T]hrough the production of medical evidence that his pain is genuine and his own credible testimony regarding his pain, symptoms and abilities, plaintiff has proven that he is physically incapable of any employment as a consequence of his compensable occupational diseases. . . . [And] [p]laintiff has also shown that even if he were capable of some sedentary work, it would be futile for him to engage in a job search in light of his age, lack of work experience, lack of training, lack of transferable skills and physical impairment.

In concluding that plaintiff was disabled, the Commission considered plaintiff's evidence as follows: he was 61 years old at the time he retired; he had a GED and had worked all his life in maintenance positions, without having had any office skills or training; he testified he would have continued to work except for his knee condition and that he retired early because the pain in his knees was so severe and he was concerned that continuing to work, given his knee conditions and the activities required of him, would eventually prevent him from being able to walk; his early retirement entitled him to a reduced pension and health benefit, less than that commensurate with having worked a thirty year career with defendant; he also testified that he continued to suffer from genuine pain, swelling and weakness in his knees even after retirement; defendant's medical examiner, Dr. Elkin, as well as Dr. King, both testified as to plaintiff's pain being consistent with his medical condition; and, finally, Dr. King restricted plaintiff from repetitive bending, stooping, squatting, or walking for more than a few minutes at a time upon returning to work for defendant after 1 July 2000. In other words, plaintiff's condition, as well as his medical restrictions, prevented him from performing his job with defendant.

Moreover, the Commission's findings of fact 1, 26, and 27 based on competent evidence indicate plaintiff went beyond proving his disability and his inability to earn a wage by "showing that even if he were capable of some sedentary work, it would be futile for him to engage in a job search in light of his age, lack of work experience, lack of training and education, lack of transferable skills and physical impairment."

Therefore, based on competent evidence, including personal and medical testimony, the Commission properly concluded plaintiff

suffered from a disability which rendered him "incapable of any employment" after 1 July 2000. The opinion and award of the Commission is affirmed.

Affirm.

Judges TYSON and STEELMAN concur.