***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with some modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. Defendant is self-insured, and administers its own workers' compensation claims.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Plaintiff's average weekly wage is $1,112.80, yielding the maximum compensation rate for the year 2005 of $704.00.
4. Plaintiff's date of injury is March 10, 2005.
5. The parties are subject to and are bound by the North Carolina Workers' Compensation Act, the North Carolina Industrial Commission has jurisdiction over the parties and the subject matter of these proceedings, and Defendant regularly employs three (3) or more employees.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Pre-trial Agreement;
 b. Stipulated Exhibit two (2) — North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit three (3) — Plaintiff's medical records;
 d. Plaintiff's Exhibit one (1) — Essential job functions for Charlotte-Mecklenburg police officers;
 e. Defendant's Exhibit one (1) — Plaintiff's medical record dated September 16, 2004; *Page 3 
 f. Defendant's Exhibit two (2) — Correspondence dated November 7, 2006 from the State of North Carolina, Department of State Treasurer, Retirement Systems Division regarding Plaintiff's disability retirement.
 *********** ISSUES
The issues for determination are:
1. Whether Plaintiff is entitled to temporary total disability compensation from November 30, 2006 through the present?
2. Whether Plaintiff's treatment for depression provided by Dr. Wesley Lee Marquand is causally related to her March 10, 2005 work injury?
3. Whether Defendant is responsible for the payment to Dr. Brian A. Simpson for his treatment of Plaintiff?
4. Whether Plaintiff's decision to retire constitutes a constructive refusal of employment?
 ***********
Based upon the competent and the credible evidence of record, as well as any reasonable references that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is currently 39 years old, and received a bachelor's degree from Gardner-Webb University in May 1991. On July 24, 1991, Plaintiff began employment with Defendant as a police officer, and in November 1991, Plaintiff graduated from the police academy, and became a patrol officer shortly thereafter. Plaintiff remained employed in that capacity until March 10, 2005. Plaintiff's specific employment position was as a community police officer, *Page 4 
which included working as a bicycle and neighborhood police officer. Plaintiff's annual performance reviews indicated that she exceeded expectations in her job performance.
2. On March 10, 2005, Plaintiff injured her back while reaching over the back seat of a suspect's car in order to retrieve the suspect's prescription medications. Specifically, Plaintiff felt a "pop" in her back as soon as she pulled herself back over the back seat with the prescription medications. Defendant accepted the compensability of this claim shortly thereafter.
3. On March 14, 2005, Plaintiff presented to Dr. David Marshall Peterson, who diagnosed her with a muscular back strain and wrote her out of work until March 29, 2005, at which time Dr. Peterson ordered modified work duty consisting of no patrol duty. In addition, Dr. Peterson ordered that Plaintiff continue with physical therapy.
4. Plaintiff remained completely out of work from March 11, 2005 through March 29, 2005, during which time Defendant paid her temporary total disability compensation. When Plaintiff returned to work on March 29, 2005, Defendant provided her with a position in which she investigated fraud cases, but did not have to follow the fraud cases through their completion, inasmuch as she did not have to go out in the field to interview suspects or witnesses, or serve warrants or otherwise effect arrests of persons whom she was investigating for fraud.
5. Defendant further accommodated Plaintiff in the modified position as a fraud investigator by allowing her to sit and stand as needed, and to utilize gym mats next door to where she worked in order to stretch out when she began to experience increased lower back pain due to prolonged sitting at a desk. Also, Plaintiff testified that Defendant allowed her to only work half-days, so that she could attend physical therapy.
6. Despite Plaintiff's decreased work hours and duties, Defendant continued to pay Plaintiff her pre-injury wage throughout her period of modified work duty. The Full *Page 5 
Commission finds, based upon the greater weight of the evidence, that the modified work duty position that Defendant provided to Plaintiff beginning March 29, 2005 was a make-work position created specifically for Plaintiff and is not available generally in the local job market.
7. On July 18, 2005, Plaintiff returned to see Dr. Peterson with complaints of lower back pain. Dr. Peterson referred Plaintiff to Dr. Eric Brian Laxer, an orthopaedist. Plaintiff first presented to Dr. Laxer on August 1, 2005, at which time he diagnosed her with a lumbar strain and continued her light-duty work restrictions.
8. Upon review of the magnetic resonance imaging (MRI) of Plaintiff's back, Dr. Laxer diagnosed Plaintiff with degenerative changes with an annular tear at the L4-L5 level of the spine, and opined that Plaintiff's March 10, 2005 work injury caused this condition, as well as her continuing lower back pain. Plaintiff returned to Dr. Laxer on December 12, 2005 complaining of intense lower back pain, aggravated by sitting, standing, and walking. On March 19, 2006, Dr. Laxer noted Plaintiff's intensified lower back pain, which worsened with any physical activity, but could be relieved with rest.
9. On June 19, 2006, Dr. Laxer opined that Plaintiff reached maximum medical improvement with respect to her March 10, 2005 work injury, and assigned a seven and one-half (7 ½) percent permanent partial disability rating to Plaintiff's back, utilizing the North Carolina Industrial Commission Guidelines. In addition, Dr. Laxer assigned Plaintiff permanent work restrictions consisting of sitting and standing as needed in order to relieve her lower back pain, lifting no more than 15 pounds, and avoiding situations involving possible altercations with suspects or other persons, including any patrol car duty. Dr. Laxer's permanent work restrictions effectively precluded Plaintiff from serving as a Charlotte-Mecklenburg police officer with Defendant, according to the essential job functions listed for Charlotte-Mecklenburg police *Page 6 
officers in Plaintiff's Exhibit one (1). Moreover, Dr. Laxer later testified that Plaintiff is unable to perform the essential job functions of a Charlotte-Mecklenburg police officer, based upon his own review of those essential job functions.
10. In addition to treatment from Dr. Laxer for Plaintiff's lower back pain, she also began to receive treatment from her long-standing primary care physician, Dr. Wesley Lee Marquand, for complaints of depression. On November 11, 2005, Dr. Marquand diagnosed Plaintiff with manic depression. Although Dr. Marquand previously treated Plaintiff for post-traumatic stress disorder in connection with witnessing fellow police officers die in the line of duty, Dr. Marquand never diagnosed her with depression until November 11, 2005.
11. In addition to treating Plaintiff's depression, Dr. Marquand also treated her chronic lower back pain. On August 28, 2006, Dr. Marquand diagnosed Plaintiff with chronic lower back pain related to her March 10, 2005 work injury. Dr. Marquand continued to treat Plaintiff for her chronic lower back pain and depression. The treatment provided to Plaintiff by Dr. Marquand was reasonably necessary to effect a cure, to give relief, and/or to lessen the period of her disability.
12. Dr. Marquand testified, to a reasonable degree of medical certainty, and the Full Commission so finds, that Plaintiff's manic depression is related to her chronic lower back pain. Dr. Marquand further testified that patients with chronic pain often have depression, and that depression often worsens the underlying pain. Dr. Marquand recommended that Plaintiff receive ongoing counseling and/or medication for her manic depression.
13. On June 29, 2007, Plaintiff underwent an evaluation by Dr. Brian A. Simpson, a psychologist. Dr. Simpson's evaluation included a detailed accounting of Plaintiff's history of witnessing fellow police officers die in the line of duty and her corresponding post-traumatic *Page 7 
stress disorder. Dr. Simpson opined that Plaintiff's loss of employment, diminished functional abilities, and chronic lower back pain all caused her manic depression to develop.
14. At the request of Defendant, Plaintiff underwent a psychiatric evaluation by Dr. Gerald Martin Aronoff, a psychiatrist. Dr. Aronoff concluded that on the day he saw and examined Plaintiff, "she was only mildly depressed." Further, Dr. Aronoff concluded that Plaintiff did not require any medication for her manic depression or narcotics for her lower back pain now or in the future; that neither her lower back pain nor her manic depression precluded her from carrying out normal activities of daily living or from full-time employment; that she was never incapable of full-time employment since her March 10, 2005 work injury; and that she requires no further medical treatment for either her lower back pain or for her manic depression.
15. Given that Dr. Aronoff only saw Plaintiff one (1) time and has no established, ongoing relationship with her, unlike with Dr. Laxer and Dr. Marquand, the Full Commission gives little weight to the opinions expressed by Dr. Aronoff. Rather, the Full Commission gives greater weight to the opinions expressed by Plaintiff's long-time treating physicians, including Dr. Marquand and Dr. Laxer. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's chronic lower back is causally related to her March 10, 2005 work injury, and that her manic depression is a direct and natural consequence of this work injury.
16. Plaintiff testified that she has lower back pain on a daily basis. Plaintiff's lower back pain fluctuates widely in degree and intensity on a weekly and even daily basis, but there is no day when she is without pain. Sometimes the pain radiates down Plaintiff's leg and is so severe that she loses her balance and falls. The pain also interferes with Plaintiff's sleep. Plaintiff testified that some days her pain is relatively manageable at "a level two [out of 10] and I'm happy go lucky, and some days I wake up, I'm six, seven, eight, and ready to be sitting in *Page 8 
my massage chair, and eat ice, and taking medicine." Driving a car significantly aggravates Plaintiff's lower back pain and precludes her from driving distances of more than 40 miles round trip on a regular basis. The Full Commission finds Plaintiff's testimony regarding her chronic lower back pain to be credible.
17. Dr. Marquand's testimony corroborated Plaintiff's description of the nature and severity of her pain. Dr. Marquand testified that the main problem with Plaintiff's chronic lower back pain is the "periodicity of her pain." Dr. Marquand went on to opine that:
 [w]hen it exacerbates and gets worse she is pretty much bedridden for several hours at a time throughout the day. That's unpredictable but it's frequent enough that it would cause problems with any employer as far as having a reliable employment five days a week for eight hours a day. I think if she were to try to find gainful employment full-time an employer would be quickly fed up with her absences due to her back pains and find reason to separate her.
18. Plaintiff met with Ms. Melinda File Daniel, Defendant's claims manager assigned to her claim, sometime after she reached maximum medical improvement and Dr. Laxer assigned the permanent work restrictions which precluded her from working as a police officer for Defendant. Ms. Daniel provided Plaintiff with a copy of a printout listing vacant employment positions with Defendant. At no time did either Ms. Daniel or any other agent of Defendant attempt to provide any vocational rehabilitation assistance to Plaintiff, or make any other attempts to assist Plaintiff in finding suitable employment once she reached maximum medical improvement and received her permanent work restrictions. Neither Ms. Daniel nor any other agent of Defendant provided Plaintiff or any of her treating physicians with any specific job descriptions to determine whether any of the vacant employment positions on the printout provided to Plaintiff were within Plaintiff's permanent work restrictions. After waiting for more than a month and not receiving communication from Defendant regarding future employment *Page 9 
prospects, Plaintiff applied for disability benefits provided by the North Carolina State Disability program that covers Defendant's employees, believing this was her only viable option.
19. On November 7, 2006, Plaintiff began to receive disability benefits provided by the North Carolina State Disability program that covers Defendant's employees. On November 30, 2006, Plaintiff retired pursuant to the North Carolina State Disability program. Dr. Laxer completed the paperwork required by the North Carolina State Disability program on August 25, 2006 and on September 20, 2007. Plaintiff continues to receive disability benefits pursuant to the North Carolina State Disability program as a result of her March 10, 2005 work injury and the resultant permanent work restrictions.
20. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff proved that she is disabled. The following evidence tends to prove Plaintiff's disability: (1) Plaintiff can no longer serve as a police officer, due to the permanent physical restrictions placed upon her by Dr. Laxer as a result of her March 10, 2005 work injury; (2) Dr. Marquand opined that Plaintiff cannot sustain gainful employment, although he did concede that she was able to perform the make work position provided by Defendant, which is not indicative of wage-earning capacity in the competitive job market; (3) Plaintiff's lower back pain fluctuates widely in degree and intensity on a weekly and even daily basis, but there is no day when she is without pain, and the pain also interferes with her sleep; (4) sometimes Plaintiff's pain radiates down her leg and is so severe that she loses her balance and falls; and (5) Plaintiff suffers from manic depression as a direct consequence of her March 10, 2005 work injury. All of this evidence supports disability under prong one (1) of Russell v. Lowes ProductionDistribution.
21. The Full Commission further finds, based upon the greater weight of the evidence, that even if Plaintiff is capable of some work, she would need vocational rehabilitation *Page 10 
assistance and probably job re-training, neither of which Defendant provided. It would be futile for Plaintiff to seek employment on her own, despite her relatively young age and advanced education, without such assistance, considering her physical limitations on her activities due to her chronic lower back pain, her psychological condition, as well as the fact that her prior work history and training is related to being a police officer, which she can no longer do. Further, based upon the greater weight of the evidence and reasonable inferences that may be drawn therefrom, it is apparent that Plaintiff wants to work, and despite her pain, demonstrated that she was willing to make the effort to go to work and perform to the best of her ability the make-work duties that Defendant provided to her.
22. Since Plaintiff's March 10, 2005 work injury, she remains incapable of earning wages in the competitive job market. Plaintiff's attempt to return to work performing her regular duties was unsuccessful. Thereafter, Defendant assigned Plaintiff light-duty tasks that constituted make work; however, she continued to receive her pre-injury wage until November 30, 2006. The Full Commission finds, based upon the greater weight of the evidence, that there is insufficient evidence to establish that Plaintiff refused suitable employment sufficient to suspend her entitlement to temporary total disability compensation, or that her choice of disability retirement constituted a constructive refusal of suitable employment.
23. As a result of Plaintiff's March 10, 2005 work injury, she is temporarily and totally disabled. Since Plaintiff received a continuation of salary until November 30, 2006, she is entitled to temporary total disability compensation from November 30, 2006 through the present and continuing until further Order of the North Carolina Industrial Commission.
 *********** *Page 11 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment on March 10, 2005. N.C. Gen. Stat. § 97-2(6) (2007).
2. Plaintiff's chronic lower back pain and manic depression are both causally related to her March 10, 2005 work injury. Terry v. PPGIndustries, Inc., 156 N.C. App. 512, 577 S.E.2d 326 (2003), reviewdenied by, 357 N.C. 256, 583 S.E.2d 290 (2003).
3. The treatment provided by Dr. Wesley Lee Marquand and the psychological evaluation provided by Dr. Brian Simpson for Plaintiff's chronic lower back pain and manic depression were reasonably necessary to effect a cure, to give relief, and/or to lessen the period of her disability, and Plaintiff is entitled to have Defendant pay for the same, including, but not limited to, ongoing treatment for chronic lower back pain and manic depression by either Dr. Marquand or any other health care provider to which he refers Plaintiff. N.C. Gen. Stat. §§ 97-2(19),97-25 (2007).
4. In order to prove disability, Plaintiff must prove that she is unable to earn the same wages she earned before her March 10, 2005 work injury, either in the same employment or in other employment. Hilliardv. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet this burden in one (1) of four (4) ways:
 (1) the production of medical evidence that that [s]he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment [citation omitted]; (2) the production of evidence that [s]he is capable of some work, but that [s]he has, after a reasonable effort . . . been unsuccessful in . . . obtain[ing] employment [citation omitted]; (3) the production of evidence that [s]he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to *Page 12 
seek other employment [citation omitted]; or (4) the production of evidence that [s]he has obtained other employment at a wage less than that earned prior to the injury [citation omitted]. Russell v. Lowes Production Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Once Plaintiff satisfies her burden of proving disability, Defendant must prove not only that suitable employment is available, but also that Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations. Kennedy v. Duke Univ. Med.Ctr., 101 N.C. App. 24, 398 S.E. 2d 677 (1990). Defendant may overcome the presumption of disability by providing evidence that: (1) suitable employment is available for Plaintiff; (2) Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations; and (3) the proffered employment would enable Plaintiff to earn some wages. Franklin v. Broyhill Furniture Indus.,123 N.C. App. 200, 472 S.E. 2d 382, cert. denied, 344 N.C. 629,477 S.E. 2d 39 (1996). If suitable employment is not otherwise available, Defendant may provide vocational rehabilitation services in order to assist Plaintiff in securing suitable employment. Cross v. FalkIntegrated Technologies, Inc., ___ N.C. App. ___, 661 S.E.2d 249 (2008).
6. In this case, Plaintiff proved that she is disabled. The following evidence tends to prove Plaintiff's disability: (1) Plaintiff can no longer serve as a police officer, due to the permanent physical restrictions placed upon her by Dr. Laxer as a result of her March 10, 2005 work injury; (2) Dr. Marquand opined that Plaintiff cannot sustain gainful employment, although he did concede that she was able to perform the make work position provided by Defendant, which is not indicative of wage-earning capacity in the competitive job market; (3) Plaintiff's lower back pain fluctuates widely in degree and intensity on a weekly and even daily basis, but there is no day when she is without pain, and the pain also interferes with her sleep; (4) *Page 13 
sometimes Plaintiff's pain radiates down her leg and is so severe that she loses her balance and falls; and (5) Plaintiff suffers from manic depression as a direct consequence of her March 10, 2005 work injury. All of this evidence supports disability under prong one (1) of Russell v.Lowes Production Distribution. Russell, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
7. Moreover, the greater weight of the evidence establishes that the nature, severity, and unpredictability of Plaintiff's chronic lower back pain are sufficient to support a determination of disability. InWeatherford v. American Nat. Can Co., the North Carolina Court of Appeals held that the plaintiff's knee pain made him incapable of working in any employment, and supported a conclusion of total disability, where there was expert medical testimony from the plaintiff's treating physician, as well as the plaintiff's own testimony, that he was in pain. Weatherfordv. American Nat. Can Co., 168 N.C. App. 377, 607 S.E.2d 348 (2005). Here, Plaintiff suffers from chronic lower back pain as a result of her March 10, 2005 work injury. The nature of Plaintiff's chronic lower back pain is such that it is highly unpredictable and fluctuates widely in degree and intensity on a weekly and even daily basis. It is impossible to predict when or how long Plaintiff's chronic lower back pain will worsen to the point that she is unable to do anything other than take narcotic medication and rest. However, such episodes occur often enough to become disruptive in most employment settings.
8. In addition to putting on evidence sufficient to satisfy prong one (1) of Russell, Plaintiff also established evidence sufficient to satisfy prong three (3) of Russell by the production of evidence that even if she is capable of some work, it would be futile, under the circumstances, to seek other employment. Russell, 108 N.C. App. 762,425 S.E.2d 454 (1993). Given the unpredictable, yet consistently disruptive cycle of Plaintiff's chronic lower back pain, any attempt by her to secure employment within her permanent work restrictions would be futile. *Page 14 
In addition, even if Plaintiff is capable of some work, she would need vocational rehabilitation assistance and probably job re-training, neither of which Defendant provided. It would be futile for Plaintiff to seek employment on her own, despite her relatively young age and advanced education, without such assistance, considering the physical limitations on her activities due to her chronic lower back pain, her manic depression, as well as the fact that her prior work history and training is related to being a police officer, which she can no longer do.
9. Defendant failed to prove either that suitable employment is available to Plaintiff, or that she is actually capable of securing employment, taking into account both her physical and vocational limitations. Kennedy v. Duke Univ. Med. Ctr., 101 N.C. App. 24,398 S.E. 2d 677 (1990).
10. Defendant made insufficient efforts, under the circumstances, to assist Plaintiff in securing suitable employment at her pre-injury wage. Other than providing Plaintiff with a copy of a printout listing vacant employment positions with Defendant, at no time did Defendant attempt to provide any vocational rehabilitation assistance to Plaintiff, or make any other attempts to assist Plaintiff in finding suitable employment once she reached maximum medical improvement and received her permanent work restrictions. Moreover, Defendant failed to provide Plaintiff or any of her treating physicians with any specific job descriptions to determine whether any of the vacant employment positions on the printout provided to Plaintiff were within Plaintiff's permanent work restrictions.
11. Based upon Defendant's failure to make sufficient efforts, under the circumstances, to assist Plaintiff in securing suitable employment at her pre-injury wage, there is insufficient evidence to establish that Plaintiff refused suitable employment sufficient to suspend her entitlement to temporary total disability compensation, or that her choice of disability *Page 15 
retirement constituted a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32 (2007); Gordon v. City of Durham,153 N.C. App. 782, 571 S.E.2d 48 (2002).
12. Plaintiff is entitled to temporary total disability compensation at the rate of $704.00 per week from November 30, 2006 through the present and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29 (2007).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay temporary total disability compensation to Plaintiff at the rate of $704.00 per week from November 30, 2006 through the present and continuing until further Order of the North Carolina Industrial Commission. The accrued compensation shall be paid in a lump sum to Plaintiff, subject to attorney's fees.
2. A reasonable attorney's fee is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Such attorney's fee shall be deducted by Defendant from Plaintiff's compensation and paid directly to Plaintiff's counsel as follows: 25 percent of the accrued compensation due Plaintiff, and thereafter every fourth (4th) check (25 percent) from future compensation shall be paid to Plaintiff's counsel.
3. Defendant shall pay for all medical expenses incurred or to be incurred in the future by Plaintiff due to her March 10, 2005 work injury, including payment for treatment by either Dr. Marquand or any other health care provider to which he refers Plaintiff, as well as any other medical providers who provided treatment related to Plaintiff's injuries. *Page 16 
4. Defendants shall pay the costs of these proceedings.
This the ___ day of December 2008.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 1