WAYNE GOODSON, Employee, Plaintiff,
v.
MAFCO HOLDINGS, INC. d/b/a REVLON CONSUMER PRODUCTS, Employer, RSKCO, Carrier, Defendants.
No. COA08-415.
Court of Appeals of North Carolina.
Filed April 7, 2009.
This case not for publication
Scudder & Hedrick, PLLC, by John A. Hedrick, for plaintiff.
Womble Carlyle Sandridge & Rice, P.L.L.C., by Clayton M. Custer and Julie B. Bradburn, for defendants.
GEER, Judge.
Defendant employer Mafco Holdings, Inc. d/b/a Revlon Consumer Products ("Revlon") and defendant carrier RSKCO appeal from the Full Commission's opinion and award, entered on remand from this Court, see Goodson v. Mafco Holdings, Inc., 178 N.C. App. 561, 631 S.E.2d 892, 2006 N.C. App. LEXIS 1579, 2006 WL 1984651 (July 18, 2006) (unpublished), determining that plaintiff Wayne Goodson is totally disabled and entitled to benefits. Defendants primarily argue that there is insufficient evidence to support the Commission's finding of disability under Russell v. Lowes Prod. Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). Although we agree that there is insufficient evidence under Russell's first method of proof, the record contains sufficient evidence of disability under Russell's third method of proof, and, therefore, we hold that the Commission did not err in determining that plaintiff is totally disabled.
Plaintiff has cross-appealed, arguing that the Commission erred in failing to rule on his motion to compel payment of the award affirmed on the prior appeal, interest, a 10% late payment penalty, and medical expenses. The Commission held the motion in abeyance pending entry of its opinion and award on remand. Because the Commission failed to rule on plaintiff's motion after entry of the opinion and award, we must remand to allow the Commission to decide the motion.

Facts
At the time of the hearing before the deputy commissioner, plaintiff was 42 years old, had graduated from high school, and had obtained a Class B commercial driver's license. Prior to working for Revlon, plaintiff had jobs as a dump truck driver, a machine operator, a cafeteria cook, and a warehouseman. Plaintiff began working for Revlon on 11 June 2001 as an inventory technician. The physical requirements of the job included lifting 40 to 75 pounds, moving 350 pound drums, and extended periods of standing.
On 16 August 2001, plaintiff had lifted or moved approximately 16 drums when he felt a "pop" in his back, tightness in his backand neck, and tingling in his left arm. Plaintiff notified his supervisor, who told him to rest for the remainder of the shift. The supervisor then filled out an accident report and instructed plaintiff to go to Granville Family Medicine to be seen by a doctor. Later the same day, plaintiff was examined by Dr. Meredith Kehrer at Granville Family Medicine. Based on her examination, she diagnosed plaintiff as having a lumbar strain and restricted him to light duty with no lifting over 10 pounds and limited bending, stooping, or reaching overhead until his return visit in five days.
Plaintiff returned to work in a light duty capacity the next day. Throughout the shift, however, plaintiff continued to have pain in his back and numbness in his left arm and hand. After finishing his shift on the morning of 18 August 2001, plaintiff went to the emergency room at Maria Parham Hospital complaining of back pain and numbness in his left arm and fingers. Plaintiff was given a wrist splint and restricted to light duty work with no lifting, no bending, and no repetitive motions.
On 20 August 2001, after finishing his shift, plaintiff went to Revlon's Occupational Health and Safety Office reporting that he had been treated at the emergency room for back pain and numbness in his arm. The nurse scheduled an appointment for plaintiff at Granville Family Medicine for later that day. Plaintiff was seen by Dr. Michael Mahan and diagnosed with a low back strain and possible overuse or carpal tunnel in his left arm and hand. Dr. Mahan continued plaintiff on light duty work with no lifting with his left hand and no lifting over five pounds with his right arm. From 20 August to 23 August 2001, plaintiff continued on light duty, but still experienced pain in his back while working. He told the nurse that he was concerned about his condition and wanted a second opinion. Without authorization from Revlon, plaintiff went to Dr. James Green on 23 August 2001. After examining plaintiff, Dr. Green wrote him out of work from 23 August 2001 to 9 September 2001 and referred him to Triangle Orthopedic Associates.
Without seeking authorization from Revlon, plaintiff went to Triangle Orthopedic Associates on 6 September 2001, where he was seen by Mr. Steve Abel, a physician's assistant. Examination of plaintiff's lumbar spine revealed a positive straight leg raise for the left leg, but no paraspinal muscle spasms or weakness were found. Mr. Abel prescribed a course of Prednisone and restricted plaintiff from work. Plaintiff returned to Mr. Abel on 20 September 2001 and reported severe pain in his lower back and left leg, although he indicated that the pain in his neck and left arm was intermittent. Mr. Abel kept plaintiff out of work and ordered an MRI.
The MRI showed a small left-side disc herniation at L5-S1. On 15 October 2001, plaintiff returned to Mr. Abel for a follow-up visit and reported that the pain in his arm had improved, but that he had intermittent tightness in his neck. Plaintiff was prescribed Percocet and injections and restricted from work until 26 November 2001. On 31 October 2001, plaintiff returned to Dr. Kehrer of Granville Family Medicine at Revlon's request. He told the doctor that he continued to have pain and described his recent medical treatment. Because plaintiff's MRI and medical notes were not available to Dr. Kehrer, she made no recommendations and did not request that plaintiff return. Dr. Kehrer noted that Revlon's nurse believed that plaintiff was malingering.
Plaintiff received an epidural steroid injection on 7 November 2001 from Dr. John Giusto. On 27 November 2001, plaintiff returned to Mr. Abel who continued to write him out of work, this time for three months, because Mr. Abel believed that surgery might be an option. Plaintiff completed a Revlon leave of absence form on 28 November 2001, requesting three months of leave due to his injury. Plaintiff saw Dr. Thomas Dimmig, an orthopedic surgeon, for the first time on 5 December 2001. Dr. Dimmig's examination of plaintiff revealed a positive straight leg raise on the left side. Plaintiff indicated that the steroid injection had been beneficial and did not complain of pain in his neck or upper extremities. They discussed surgery, but Dr. Dimmig recommended another injection prior to making any decision regarding surgery. Dr. Dimmig noted that any work would have to be modified, although he provided plaintiff with no specific restrictions, and his notes do not indicate that he discussed work status with plaintiff.
On 9 January 2002, plaintiff was seen at Triangle Orthopedic Associates by a physician's assistant, Kevin Lavery. Plaintiff reported that he had received a second epidural steroid injection, and his pain had improved. Mr. Lavery continued to keep plaintiff out of work. Plaintiff saw Mr. Lavery again on 24 January 2002, complaining of increased neck and back pain. Plaintiff displayed a positive straight leg raise in his left leg and was diagnosed with cervical pain. Plaintiff declined physical therapy and was prescribed pain medication for his back.
Plaintiff returned to Dr. Dimmig on 6 February 2002, complaining of increased pain in his back and neck and radiating pain to the left shoulder. On plaintiff's next visit to Dr. Dimmig, on 1 March 2002, plaintiff complained of diffuse weakness in his left hip and leg, as well as global weakness of the left leg with a small amount of foot drop. Plaintiff's shoulder had improved. Dr. Dimmig instructed plaintiff to continue conservative treatment and prescribed Percocet, but did not discuss work restrictions with him.
On 3 April 2002, plaintiff was seen again by Dr. Dimmig. He complained of continuing back pain and weakness in his leg, but the pain in his left hip had improved. Dr. Dimmig recommended a lumbar and cervical MRI and continued to keep plaintiff out of work. Based on the MRI, plaintiff was scheduled to undergo a lumbar discectomy, to be performed by Dr. Dimmig on 23 June 2002. On 7 June 2002, Dr. Dimmig evaluated plaintiff, found a decreased range of motion and a positive straight left leg raise, and excused plaintiff from work pending the surgery. Dr. Dimmig also discussed the risks and benefits of the surgery with plaintiff, indicating that there was a 50/50 chance he would improve. Based on this assessment, plaintiff decided to cancel the surgery.
On 18 July 2002, after the surgery was canceled, Dr. Dimmig declared plaintiff to be at maximum medical improvement. Although he initially assigned a 20% permanent impairment rating, he later, in his deposition, testified that a 10% to 15% permanent impairment rating was more accurate given plaintiff's lumbar condition. Dr. Dimmig restricted plaintiff from lifting more than 15 to 20 pounds and from repetitive bending. He also indicated that any job would need to give plaintiff the ability to alternate sitting and standing throughout the day. Dr. Dimmig did not give plaintiff a note releasing him to return to work and did not inform plaintiff that he might be capable of some form of modified work.
Plaintiff's claim was heard by a deputy commissioner on 12 November 2003. On that same date, defendants filed a Form 60 accepting liability for a "low back strain" as a result of the injury plaintiff sustained on 16 August 2001. Defendants, however denied that plaintiff was disabled and did not accept plaintiff's cervical condition. The deputy commissioner, in an opinion and award filed 22 March 2004, determined that plaintiff was unable to earn the same wages he had earned prior to the injury for the period from 24 August 2001 to 18 July 2002 as a result of his injury by accident. The deputy commissioner, however, determined that plaintiff had failed to prove he was totally disabled after 18 July 2002. On appeal, the Full Commission filed an opinion and award on 8 July 2005, affirming in part and reversing in part the deputy commissioner's decision. Specifically, the Commission concluded that plaintiff had suffered a compensable injury by accident on 16 August 2001 that resulted in a herniated disc at the L5-S1 level as well as neck and left arm pain. The Commission further concluded that "[a]s a result of his compensable injury on August 16, 2001, plaintiff is entitled to temporary total disability compensation at a rate of $278.05 from August 23, 2001 and continuing until plaintiff returns to work or an order of the Commission."
Defendants appealed the Commission's decision to this Court, and, in an unpublished opinion, the Court affirmed in part and reversed and remanded in part, holding:
The Commission's opinion and award contains no specific conclusion of law that plaintiff has met his burden of showing an inability to earn the same wages after 18 July 2002 based upon any of the four Russell factors, and it is completely devoid of findings of fact that would support such a conclusion. Without findings of fact for this crucial issue, we cannot determine whether there was support for the Commission's relevant conclusion of law and its award. We must therefore reverse the Commission's award of temporary total disability benefits for the ongoing time period following 18 July 2002, and remand for proper findings of fact. The remainder of the Commission's award is affirmed.
Goodson, 2006 N.C. App. LEXIS 1759 at *7, 2006 WL 1984651 at *3 (internal citations omitted).
On 28 September 2006, plaintiff filed a motion to compel payment of award, interest, medical expenses, and a 10% late payment penalty. On 13 March 2007, the Commission entered an orderholding in abeyance plaintiff's motion "until the entry of the Full Commission's Opinion and Award on remand."
On remand, the Commission amended its opinion and award to include findings of fact and a conclusion of law relating to plaintiff's burden of proving disability. Specifically, the Commission concluded:
In the present case, the medical record does not show that plaintiff was ever released to return to work; however, even if it were to be found that plaintiff is capable of some work, the plaintiff has shown that it would be futile given his lack of education or technical training beyond the scope of heavy labor, and his physical restrictions as a result of his compensable injury. . . . Thus, the Full Commission concludes that plaintiff has shown continuing disability under the Russell test.
The Commission, therefore, awarded plaintiff temporary total disability benefits from 23 August 2001, continuing "until plaintiff returns to work or further order of the Commission . . . ." The Commission did not address plaintiff's motion that had been held in abeyance. Both defendants and plaintiff timely appealed to this Court.

Defendants' Appeal
As an initial matter, we note that the facts in this case were largely settled when, in their prior appeal, defendants failed to assign error to any of the Commission's findings of fact. Goodson, 2006 N.C. App. LEXIS 1759 at *3-4, 2006 WL 1984651 at *1. The case was remanded only for the Commission to make findings as to whether "plaintiff . . . met his burden of showing an inability to earn the same wages after 18 July 2002 based upon any of the four Russell factors . . . ." Id. at *8, 2006 WL 1984651 at *3. In the present appeal, defendants assign error only to the Commission's new findings of fact and the corresponding conclusion of law regarding plaintiff's on-going disability. The Commission's unchallenged findings and conclusions are, consequently, binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
It is well established that "[t]he employee has the burden of proving the existence and extent of his disability[.]" Johnson v. City of Winston-Salem, ___ N.C. App. ___, ___, 656 S.E.2d 608, 613, disc. review denied, 362 N.C. 359, 664 S.E.2d 308, aff'd per curiam, 362 N.C. 676, 669 S.E.2d 319 (2008). "[I]n order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury." Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). A plaintiff may establish the first two elements through any one of four methods of proof:
(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4)the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell, 108 N.C. App. at 765, 425 S.E.2d at 457 (internal citations omitted).
In this case, the Commission found that plaintiff had met his burden of establishing total disability under both the first and third prongs of Russell. Defendants contend on appeal that the record contains insufficient evidence to support that determination. We address each Russell method of proof separately.
With respect to the first method of proof, the Commission found that plaintiff had been restricted from working by his health care providers through 26 November 2001. On 27 November 2001, a physician's assistant again wrote plaintiff out of work for at least three months because of the possibility of surgery. With respect to the medical evidence regarding plaintiff's ability to work following his decision not to undergo surgery, the Commission made the following findings of fact:
33. On July 18, 2002, after plaintiff cancelled his surgery, Dr. Dimmig declared plaintiff at maximum medical improvement. Although Dr. Dimmig initially assigned a 20% permanent impairment rating, he testified at deposition that a 20% rating was high and that, given plaintiff's lumbar condition, a rating of 10% to 15% was more accurate. Those restrictions, as set by Dr. Dimmig, are no repetitive bending, no lifting more than 15 to 20 pounds, and the ability to alternate sitting and standing throughout the day. Dr. Dimmig never provided plaintiff with a note releasing him to return to any kind of work, and there is no evidence that Dr. Dimmig informed plaintiff that he might be capable of some form of modified work. Further, the Full Commission finds that there is no medical record indicating that plaintiff's condition had improved between June 7, 2002, when he was last written out of work by Dr. Dimmig, and July 18, 2002, when he was declared to be at maximum medical improvement. Thus, there is insufficient evidence upon which to find that plaintiff was capable of returning to work as of July 18, 2002.

34. Plaintiff experienced pain and discomfort in his back, left hip and leg as a result of his herniated disc. Plaintiff suffered back and leg pain that improved over time.
35. Dr. Dimmig reviewed the assembler job description and stated that plaintiff could have performed most of the tasks but, depending on how tasks would be performed, plaintiff may not have been able to perform some tasks. Dr. Dimmig needed additional information on how often lifting 25 pounds would have been performed and how far or long the 25-pound boxes would have to be carried. Dr. Dimming [sic] was also concerned about whether bending would be required in placing boxes on pallets.
. . . .
37. As a result of his low back injury, plaintiff has left leg weakness. He also has foot drop and giving way of the left knee. He ambulates with the assistance of a cane and is only able to walk short distances. The medical record shows that, as a result of his cervical and lumbar injuries, plaintiff is not able to perform any of the jobs he held prior to his employment with defendant-employer. Likewise, the evidence does not show that plaintiff could perform the duties of an assembler.
(Emphasis added.) Based on these findings, the Commission concluded that plaintiff had established continuing disability under Russell's first method of proof because "the medical record does not show that plaintiff was ever released to return to work . . . ." When the Commission found that "there is insufficient evidence upon which to find that plaintiff was capable of returning to work as of July 18, 2002," the Commission incorrectly inverted the burden of proof under Russell. The Commission based its determination of total disability on an absence of medical evidence that plaintiff is capable of work. The burden was instead on plaintiff to persuade the Commission through the production of medical evidence that he is physically or mentally incapable of work in any employment. The Commission, however, made no findings regarding any medical evidence indicating that plaintiff was "incapable of work in any employment." Russell, 108 N.C. App. at 765, 425 S.E.2d at 457.
The Commission focused on the fact that Dr. Dimmig never released plaintiff to return to work as support for its conclusion that plaintiff established disability under Russell's first method. This Court has already held that a finding that a doctor never released a plaintiff to return to work is insufficient to establish disability under the first prong of Russell. See Parker v. Wal-Mart Stores, Inc., 156 N.C. App. 209, 212, 576 S.E.2d 112, 114 (2003) (holding Commission's findings were insufficient to support determination of disability where "the Full Commission merely found that [plaintiff's doctor] had not released plaintiff to return to work after her surgery even though she retained the ability to perform a range of activities that may or may not have allowed her to earn her pre-injury wages . . . ."). At most, the Commission, in this case, found that "[t]he medical record shows that, as a result of his cervical and lumbar injuries, plaintiff is not able to perform any of the jobs he held prior to his employment with defendant-employer." The Commission also pointed to Dr. Dimmig's testimony regarding plaintiff's work restrictions. The findings, however, simply establish that plaintiff may not be capable of securing certain types of employment. As such, they are insufficient to establish that plaintiff could not obtain any employment due to his work-related injury. See Ramsey v. S. Indus. Constructors Inc., 178 N.C. App. 25, 42, 630 S.E.2d 681, 692 (concluding medical evidence was insufficient to establish disability under Russell's first prong when doctor's testimony showed only that, due to injury, plaintiff could not lift objects over his head, suffered partial permanent loss of the use of his right arm, and was "more disabled than he would otherwise be as a result of the injury" due to congenital problems with his left arm), disc. review denied, 361 N.C. 168, 639 S.E.2d 652 (2006); Terasaka v. AT&T, 174 N.C. App. 735, 740, 622 S.E.2d 145, 149 (2005) (holding that medical evidence that plaintiff could not return to job that required repetitive motion of hands and wrists does not amount to finding that "plaintiff could not work in any employment"), aff'd per curiam and disc. review improvidently allowed, 360 N.C. 584, 634 S.E.2d 888 (2006).
Thus, the Commission's findings of fact  and indeed the evidence in the record  are insufficient to support a conclusion that plaintiff met his burden as to the first prong of Russell. The Commission, however, alternatively concluded that plaintiff met the third prong of Russell, providing that a plaintiff may establish disability through "the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[.]" 108 N.C. App. at 765, 425 S.E.2d at 457.
Defendants primarily contend that plaintiff was required to "come forth with vocational or medical evidence supporting the assertion that it is futile for a claimant to compete in the job force." This Court has already rejected the argument that medical evidence is necessary on this issue. See White v. Weyerhaeuser Co., 167 N.C. App. 658, 672, 606 S.E.2d 389, 399 (2005) ("The absence of medical evidence does not preclude a finding of disability under one of the other three tests [of Russell]."); Matthews v. City of Raleigh, 160 N.C. App. 597, 613, 586 S.E.2d 829, 841 (2003) ("Defendant argues that plaintiff must prove his disability with medical evidence. However, `this Court has approved methods of proof other than medical evidence to show that an employee has lost wage earning capacity, and is therefore, entitled to total disability benefits.'" (quoting Bridwell v. Golden Corral Steak House, 149 N.C. App. 338, 343, 561 S.E.2d 298, 302, disc. review denied, 355 N.C. 747, 565 S.E.2d 193 (2002)).
As for vocational evidence, defendants have cited no cases holding that vocational evidence must be presented to prove the third prong of Russell. In the cases relied upon by defendants, the plaintiffs had presented such evidence, but the opinions include no holding that the evidence was required. Indeed, as plaintiff has pointed out, this Court has upheld a determination that the third Russell prong was proven on numerous occasions in which the record contained no vocational evidence. See, e.g., Johnson, ___ N.C. App. at ___, 656 S.E.2d at 615; Weatherford v. Am. Nat'l Can Co., 168 N.C. App. 377, 383, 607 S.E.2d 348, 352-53 (2005).
Defendants also contest the Commission's reference to plaintiff's "lack of education or technical training beyond the scope of heavy labor." Although defendants argue that plaintiff's job history "reveals an absence of `heavy labor,'" they have misread the finding of fact which is focusing on the type of education or technical training that plaintiff has received. We read the finding as referencing his training for truck driving, which can entail heavier work.
Defendants have not addressed the Commission's other findings describing plaintiff's current condition, which includes left leg weakness, foot drop, and a giving way of his left knee. According to the Commission, plaintiff, who was 42 at the time of the hearing, now walks with the assistance of a cane and is able to walk only short distances. With respect to the Commission's finding that he had a "lack of education or technical training beyond the scope of heavy labor," the testimony revealed that plaintiff received a high school degree 30 years ago, has not attended community college, has no special vocational training, andhas not been accepted in the county vocational program. Although plaintiff has a class B CDL truck driver's license, the Commission found that plaintiff was not able to perform any of the jobs he held prior to his employment with Revlon, which would include the truck driving. As the Commission found, Dr. Dimmig had limited plaintiff to no repetitive bending, to no lifting more than 15 to 20 pounds, and to jobs allowing alternate sitting and standing throughout the day. With respect to the one job identified by defendants, the Commission found that plaintiff could not perform its duties.
The Commission further found, based on these underlying findings, that plaintiff's lack of education or technical training combined with his physical restrictions led to the conclusion that it would be futile for plaintiff to seek employment. This Court has previously found similar findings and evidence sufficient to support a determination of disability. See, e.g., Johnson, ___ N.C. App. at ___, 656 S.E.2d at 615 (noting findings that plaintiff only had high school education, had worked as custodian most of his life, had numerous physical problems, and was not offered and had not received vocational rehabilitation services); Weatherford, 168 N.C. App. at 383, 607 S.E.2d at 352-53 (finding sufficient to support determination of futility Commission's findings that plaintiff had GED, had worked only in maintenance positions, had no office skills or training, had severe pain in his knees, and had doctor's restrictions on bending, stooping, squatting, or walking more than few minutes at a time); Rivera v. Trapp, 135 N.C. App. 296, 303, 519 S.E.2d 777, 781 (1999) (upholding determination of disability based on plaintiff's testimony that "his arm was `no good'" and on his "limited ability to understand English, coupled with his exclusive background in construction work," which made him unemployable).
The Commission's findings, therefore, support its determination that plaintiff met his burden under the third method of proof in Russell. Since defendants have made no other argument on appeal, we affirm the Commission's opinion and award.

Plaintiff's Appeal
In his sole argument on appeal, plaintiff contends that the Commission erred in failing to rule on his motion requesting that the Commission order defendants to pay (1) the portion of the Commission's award affirmed by this Court in the previous appeal pursuant to N.C. Gen. Stat. § 97-18(e) (2007); (2) a 10% late payment penalty under N.C. Gen. Stat. § 97-18(g); (3) interest on the award under N.C. Gen. Stat. § 97-86.2 (2007); and (4) incurred medical expenses. Although the Commission held plaintiff's motion in abeyance pending entry of its opinion and award on remand, the Commission's decision did not address whether plaintiff is entitled to the relief sought in his motion.
"[I]t [i]s the duty and responsibility of the full Commission to decide all of the matters in controversy between the parties." Joyner v. Rocky Mount Mills, 92 N.C. App. 478, 482, 374 S.E.2d 610, 613 (1988). Where, as here, the question has been properly raised before the Commission, it is error for the Commission to fail torule on whether a plaintiff is entitled to the relief requested. See Estate of Apple v. Commercial Courier Express, Inc., 165 N.C. App. 514, 519, 598 S.E.2d 625, 628 ("Where the issue has been raised before the Commission, it is error for the Commission to fail to rule on whether attorneys' fees should be awarded."), disc. review denied, 359 N.C. 188, 606 S.E.2d 904 (2004). In this case, the Commission did not determine whether plaintiff is entitled to have defendants compelled to pay the previously affirmed award, post-judgment interest, a late payment penalty, or medical expenses. Accordingly, we remand this case to the Commission for a determination of these issues.
Affirmed in part; reversed and remanded in part.
Judges ROBERT C. HUNTER and ELMORE concur.
Report per Rule 30(e).