***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding good grounds to receive further evidence, but not to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 *********** PLAINTIFF'S MOTION TO TAKE NEW EVIDENCE
Plaintiff moved, pursuant to Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, for an Order allowing the inclusion of certain additional documents into evidence, including the medical records from Samaritan Interventional Pain *Page 2 
Management Center, North Country Orthopaedic Group, P.C., and Dr. Bruce L. Baird, as well as the depositions of certain physicians associated with these health care providers, all of whom are located in New York, where Plaintiff now resides. Plaintiff contends that such evidence would be relevant and necessary to provide the Full Commission with up-to-date medical evidence, and would prevent the necessity of another hearing. In Defendants' Response to Plaintiff's Motion to Take New Evidence, submitted over three (3) months after Plaintiff's Motion, Defendants did not object to the admission of this additional evidence; however, Defendants did state that none of the medical records from Samaritan Interventional Pain Management Center, North Country Orthopaedic Group, P.C., and Dr. Bruce L. Baird discuss Plaintiff's ability/inability to work, and these records are no different than the medical records already in evidence, in that they continue to document her complaints of pain. In addition, Defendants argued that if the Full Commission concluded that Plaintiff had a change of condition since moving to New York and that she is no longer able to work with restrictions, then the Full Commission should allow Defendants an offset for the temporary total disability compensation paid for the period of time that she was able to work with restrictions but did not do so. After consideration of the written and the oral arguments of the parties, Plaintiff's Motion is hereby DENIED as to the re-opening of the record for the taking of additional deposition testimony, and GRANTED as to the admission of the medical records from Samaritan Interventional Pain Management Center, North Country Orthopaedic Group, P.C., and Dr. Bruce L. Baird.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 3 
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. The parties are correctly designated, and there is no question as to mis-joinder or the non-joinder of any party.
3. This matter is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between the parties on July 30, 2006. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer on July 30, 2006.
5. Plaintiff sustained a compensable specific traumatic incident arising out of and in the course and scope of her employment with Defendant-Employer on July 30, 2006 to her lower back when she was setting up a furniture display.
6. Plaintiff's average weekly wage was $706.98 on July 30, 2006, yielding a compensation rate of $471.34.
7. Plaintiff continued working in a light-duty capacity with Defendant-Employer from July 31, 2006 through December 10, 2006, and Defendants paid Plaintiff temporary partial disability compensation at various rates from July 31, 2006 through December 10, 2006.
8. Defendants have been paying Plaintiff temporary total disability compensation at the rate of $471.34 per week from December 11, 2006 to the present.
9. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Pre-trial Agreement; *Page 4 
 b. Stipulated Exhibit Two (2) — Plaintiff's medical records, North Carolina Industrial Commission forms and filings, discovery responses, and Plaintiff's August 3, 2006 recorded statement, all collectively paginated 1 through 324.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff should be compelled to comply with reasonable vocational rehabilitation efforts?
2. Whether Plaintiff has any restrictions as a result of her July 30, 2006 work injury?
3. Whether Plaintiff is entitled to any additional disability compensation and/or medical compensation as a result of her July 30, 2006 work injury?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 48 years old, with a date of birth of March 15, 1961. Plaintiff graduated from high school, attended college for approximately one and one-half (1½) years, and has a work history primarily comprised of retail management. Plaintiff has an adult special needs child for whom she is responsible for all aspects of her care and activities of daily living. Beginning in 2001, Plaintiff worked as an assistant manager for Defendant-Employer. As an assistant manager, Plaintiff's job duties consisted of moving stock, unloading trucks, and setting up sales displays. *Page 5 
2. Plaintiff sustained a compensable work injury as a direct result of a specific traumatic incident arising out of and in the course and scope of her employment with Defendant-Employer on July 30, 2006 to her lower back while lifting furniture in order to set up a sales display. Defendants accepted the compensability of Plaintiff's July 30, 2006 work injury via an undated Form 63. Defendants began paying Plaintiff temporary partial disability compensation as of July 31, 2006.
3. Plaintiff first sought treatment for her July 30, 2006 work injury on the date of the injury at the Carolinas Health System emergency department. The medical records from this visit describe Plaintiff's July 30, 2006 work injury as follows: "[w]hile lifting chair — had pain in lower back. 1 hour ago." Plaintiff eventually received a diagnosis of left-sided lumbar radiculopathy and a far-lateral disc herniation at the L4-L5 level of the spine. In the weeks following Plaintiff's July 30, 2006 work injury, she underwent spinal injections and other conservative treatments which ultimately proved to be unsuccessful. 4. On July 31, 2006, Plaintiff returned to work with Defendant-Employer and attempted a light-duty job. Plaintiff's attempt to return to work was unsuccessful, because she was in too much pain to be able to perform the light-duty work assigned to her. On December 6, 2006, Dr. Joe David Bernard, Jr., a neurosurgeon, took Plaintiff out of work, and on that same day, Defendants began paying temporary total disability compensation to Plaintiff pursuant to a Form 62. On December 15, 2006, Dr. Bernard performed a micro-discectomy on Plaintiff.
5. After the *Page 6 
December 15, 2006 micro-discectomy, Plaintiff described her pain as being "twice as bad" as it was prior to the micro-discectomy, and reported having such painful spasms that she could not walk, drive, or work. Plaintiff has yet to return to work subsequent to her December 15, 2006 micro-discectomy due to her ongoing complaints of pain, and continues to receive temporary total disability compensation from Defendants.
6. On April 5, 2007, Dr. Bernard opined that Plaintiff was at maximum medical improvement and had a permanent partial disability rating of 15 percent to her back. Dr. Bernard was also of the opinion, as stated in his note from this visit, that Plaintiff was "unable to return to work at this time" due to her continued lower back pain. Dr. Bernard restricted Plaintiff's activity to no bending, stooping, lifting greater than 15 pounds, or standing more than an hour at a time, and went on to note that "[i]f further delineation of her physical capabilities are needed, I would recommend a functional capacity evaluation." Dr. Bernard noted that his only other options to address Plaintiff's continued lower back pain was either a lumbar spinal fusion, continued pain management, or perhaps a spinal cord stimulator. However, Plaintiff did not wish to pursue the option of lumbar spinal fusion, due to the lack of optimism that Dr. Bernard had about its likelihood of success in resolving her continued lower back pain.
7. On April 13, 2007, Dr. Bernard opined that Plaintiff was still unable to return to work due to her continued lower back pain. Dr. Bernard further noted that if Plaintiff could get her pain under control, she could work with the following restrictions: "[m]inimize bending and stooping, should stand less than an hour at a time and keep her lifting, pushing, and pulling to under [sic] 15 pounds as a guideline for future reference." In addition, Dr. Bernard referred Plaintiff to pain management for evaluation and treatment.
8. On May 10, 2007, Dr. Robert Samuel Humble, an orthopaedist, evaluated Plaintiff. Dr. Humble's note from this visit recommended that Plaintiff undergo "a repeat MRI scan with enhancement to see if there is any recurring disc or anything else other than scar tissue causing this [pain]." Dr. Humble also suggested aquatic therapy and "vocational rehab to retrain and educate her *Page 7 
because she is not going to be able to lift and move furniture ever again." Finally, Dr. Humble noted that he explained to Plaintiff that "far lateral disc herniations" like the one she has "are the worst ones to have and they are the least successful with surgery and . . . it is customary and usual for back pain to get worse after this type of surgery."
9. On May 11, 2007, Plaintiff presented to Dr. Thomas Kern Carlton, III, a pain management specialist, upon referral from Dr. Bernard. On June 8, 2007, Dr. Carlton recommended that Plaintiff begin looking for employment, and that she participate in a four (4) week out-patient pain rehabilitation program comprised of physical therapy, psychological intervention, vocational assistance, and medical management. Plaintiff did not feel that she would be able to participate in the out-patient pain rehabilitation program due to the care-taking obligations that she had with respect to her adult special needs child. Dr. Carlton felt that Plaintiff's concerns were legitimate.
10. Plaintiff continued to seek treatment from Dr. Carlton for pain management until December 17, 2008, and was compliant with his treatment recommendations throughout that time. Throughout Dr. Carlton's treatment of Plaintiff, he never modified the work restrictions originally issued by Dr. Bernard. Despite the treatment that Plaintiff received from Dr. Carlton, her lower back pain continued to increase over time, and she consistently had episodes of severe and disabling lower back pain that rendered her unable to work. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's testimony concerning her level of pain is credible.
11. When asked about Plaintiff's ability to perform her pre-injury job duties with Defendant-Employer, which included moving racks of clothing, helping to unload trucks of merchandise, and putting merchandise out in the store, all of which required Plaintiff to either push, lift, or pull more than 15 pounds, Dr. Carlton was of the opinion that this "type of work sounds like it exceeds the restrictions that were given to her by her surgeon. So I would expect her to have a lot of *Page 8 
difficulty with that." Dr. Carlton further opined that he did not have sufficient information to express any opinions regarding the causation of Plaintiff's current depression. Rather, Dr. Carlton felt that mental health specialists would be better suited to express opinions regarding Plaintiff's current depression, especially since she had other factors in her life which contributed to the depression, and she had it before her July 30, 2006 work injury. The Full Commission gives great weight to the opinion testimony of Dr. Carlton.
12. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff would benefit from a functional capacity evaluation, aquatic therapy, and reasonable vocational rehabilitation assistance. Defendants did not offer to Plaintiff either vocational rehabilitation assistance or work within the restrictions give by Dr. Bernard on April 13, 2007.
13. The Full Commission finds, based upon the greater weight of the evidence, that as a result of Plaintiff's July 30, 2006 work injury, she is unable to perform her pre-injury job duties, and that her pain level is not under sufficient control to permit her to perform work within the restrictions given by Dr. Bernard on April 13, 2007. The Full Commission further finds that withoutvocational rehabilitation assistance and probably job re-training,it would be futile for Plaintiff to seek employment on her own, dueto her physical restrictions resulting from her uncontrolled levelof pain and depression, despite her relatively young age andeducational background. On December 6, 2006, Plaintiff became totally disabled from earning wages in any employment as a result of her July 30, 2006 work injury.
14. Plaintiff failed to prove that her July 30, 2006 work injury either caused, exacerbated, materially accelerated, or materially aggravated her pre-existing psychological condition(s).
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, a plaintiff must prove that the disabling back injury arose out of and in the course and scope of their employment, and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6) (2008); Richards v.Town of Valdese, 92 N.C. App. 222, 374 S.E.2d 116 (1988),disc. rev. denied, 324 N.C. 337, 378 S.E.2d 799 (1989). Under the specific traumatic incident theory, a plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703, 449 S.E.2d 233 (1994), cert. denied,339 N.C. 737, 454 S.E.2d 650 (1995); Bradley v. E.B. Sportswear,Inc., 77 N.C. App. 450, 335 S.E.2d 52 (1985).
2. Plaintiff sustained a compensable work injury as a direct result of a specific traumatic incident arising out of and in the course and scope of her employment with Defendant-Employer on July 30, 2006 to her lower back when she was setting up a furniture display. N.C. Gen. Stat. § 97-2(6) (2008); Fish v.Steelcase, Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994),cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995);Bradley v. E.B. Sportswear, Inc.,77 N.C. App. 450, 335 S.E.2d 52 (1985).
3. In order to prove disability, Plaintiff must prove that she is unable to earn the same wages she earned before her July 30, 2006 work injury, either in the same employment or in other employment. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet this burden in one (1) of four (4) ways: *Page 10 
 (1) the production of medical evidence that that [s]he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment [citation omitted]; (2) the production of evidence that [s]he is capable of some work, but that [s]he has, after a reasonable effort . . . been unsuccessful in . . . obtain[ing] employment [citation omitted]; (3) the production of evidence that [s]he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment [citation omitted]; or (4) the production of evidence that [s]he has obtained other employment at a wage less than that earned prior to the injury [citation omitted]. Russell v. Lowes Production Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Once Plaintiff satisfies her burden of proving disability, Defendants must prove not only that suitable employment is available, but also that Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations. Kennedy v. Duke Univ. Med. Ctr.,101 N.C. App. 24, 398 S.E. 2d 677 (1990). Defendants may overcome the presumption of disability by providing evidence that: (1) suitable employment is available for Plaintiff; (2) Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations; and (3) the proffered employment would enable Plaintiff to earn some wages. Franklin v. Broyhill Furniture Indus.,123 N.C. App. 200, 472 S.E. 2d 382, cert. denied,344 N.C. 629, 477 S.E. 2d 39 (1996). If suitable employment is not otherwise available, Defendants may provide vocational rehabilitation services in order to assist Plaintiff in securing suitable employment. Cross v. Falk Integrated Technologies,Inc., 190 N.C. App. 274, 661 S.E.2d 249 (2008).
5. In the case at bar, the greater weight of the evidence establishes that the nature, severity, and unpredictability of Plaintiff's continued lower back pain are sufficient to support a determination of disability. In Weatherford v. American Nat. CanCo., the North Carolina Court of Appeals held that the plaintiff's knee pain made him incapable of working in any employment, *Page 11 
and supported a conclusion of total disability, where there was expert medical testimony from the plaintiff's treating physician, as well as the plaintiff's own testimony, that he was in pain.Weatherford v. American Nat. Can Co.,168 N.C. App. 377, 607 S.E.2d 348 (2005). Here, Plaintiff suffers from continued lower back pain as a result of her July 30, 2006 work injury. The nature of Plaintiff's continued lower back pain is such that it fluctuates widely in degree and intensity, and it is impossible to predict when or how long Plaintiff's lower back pain will worsen to the point that she is unable to do anything other than take medication and rest.
6. The Form 62's filed in this matter do not create a presumption of continuing disability. Rather, the burden of proving continuing disability remains with Plaintiff. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001). Here,Plaintiff presented evidence sufficient to satisfy prong one (1) andprong three (3) of Russell v. Lowe's ProductDistribution. Russell,108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff presentedevidence establishing that as a result of her July 30, 2006 workinjury, she is unable to perform her pre-injury job duties, andthat her pain level is not under sufficient control to permit her toperform work within the restrictions given by Dr. Bernardon April 13, 2007. Plaintiff also presented evidence establishingthat given the unpredictable, yet consistently disruptive cycle ofher continued lower back pain, any attempt by her to secureemployment within her permanent work restrictions (which arecontrolled by her level of pain) would be futile. Plaintiff furtherestablished that even if she is capable of some work, withoutvocational rehabilitation assistance and probably job re-training,it would be futile for her to seek employment on her own, due to herphysical restrictions resulting from her uncontrolled level of painand depression, despite her relatively young age and educationalbackground. On December 6, 2006, Plaintiff became totally disabled from *Page 12 
earning wages in any employment as a result of her July 30, 2006 work injury. Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Defendants failed to prove either that suitable employment is available to Plaintiff, or that she is actually capable of securing employment, taking into account both her physical and vocational limitations. Kennedy v. Duke Univ. Med. Ctr.,101 N.C. App. 24, 398 S.E. 2d 677 (1990).
8. Plaintiff is entitled to temporary total disability compensation at the rate of $471.34 per week from December 6, 2006 through the present and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29 (2008); Russell v. Lowes Prod.Distribution, 108 N.C. App. 762 (1993).
9. Plaintiff would benefit from a functional capacity evaluation, aquatic therapy, and reasonable vocational rehabilitation. Regardless of Plaintiff's personal or family commitments with respect to the care that she provides to her adult special needs child, she is obligated to comply with reasonable vocational rehabilitation efforts as directed by Defendants. N.C. Gen. Stat. §§ 97-2(19); 97-25 (2008).
10. Plaintiff is entitled to have Defendants pay for all medical treatment reasonably related to her July 30, 2006 work injury, including a functional capacity evaluation, aquatic therapy, and reasonable vocational rehabilitation. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
11. Plaintiff failed to prove that her July 30, 2006 work injury either caused, exacerbated, materially accelerated, or materially aggravated her pre-existing psychological condition(s).Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000).
 *********** *Page 13 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $471.34 per week from December 6, 2006 and continuing until further order of the North Carolina Industrial Commission. Defendants shall be given a credit for any temporary total disability compensation already paid.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's July 30, 2006 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the compensation owed to Plaintiff and every fourth (4th) check thereafter.
4. Defendants shall pay the costs of these proceedings.
This the __ day of December 2009.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 14 
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER